

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1551-07

**ROBERT HENRY SHEPHERD, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, and PRICE, JJ., dissented.

### O P I N I O N

Police responded to a call from appellant's neighbors, who were concerned because appellant's front door had been left open. When police entered appellant's house, they saw contraband in plain view. The question is whether the seizure of this contraband was constitutionally permissible under the emergency doctrine. The answer is "yes." We will therefore affirm the judgment of the court of appeals.

Viewed in the light most favorable to the trial court's ruling, the pertinent facts are as

follows: Araceli Silva had lived across the street from appellant for sixteen years. She had noticed that he always left the house from his garage and never left the front door open. On the date in question, however, she noticed that the front door to appellant's home was open and his car was not in the driveway. She became worried that appellant might have been the victim of a break-in. She contacted appellant's next-door neighbor, James Mosley, who stood in appellant's front doorway and called out for appellant, but received no response. Mosley and Silva could not determine who, if anyone, was inside the residence, so they called the police to report the matter.

Police officers responded to the call, and Mosley explained the situation to them. The officers had found from their training and experience that an "open-door call" could indicate a burglary, and that the homeowner or other occupant could be hurt or suspects could still be inside. They were, thus, concerned that the homeowner could be hurt or that there could have been suspects inside.

Officer Kraig Williamson explained their normal procedure in such situations:

> We are dispatched to the call. Usually two units will go because we don't know what we have at the time. . . . [U]sually if the door is wide open, we'll announce ourselves. If nobody answers, we enter the residence, clear the residence to make sure there's no suspects, no homeowner or persons inside that are hurt. And then . . . after we clear the home, we'll secure it, try to contact the homeowner to see if it was burglarized or . . . why his door was wide open.

The officers called into appellant's residence and received no answer. They then entered the residence with their guns drawn and walked through the home to check for anyone who might be in distress. They looked in closets, but did not open any drawers. During this sweep, they saw, on top of a table in the living room, a bong and a transparent plastic bag of marijuana, neither of which were concealed in any way. The police seized the bag of marijuana. Officer Williamson testified that they

had entered the home to avert or respond to any possible danger to appellant; they had not been looking for marijuana or any other evidence that might inculpate him in a crime.

Shortly thereafter, appellant arrived at the scene. Officer Williamson asked him if he lived alone, and appellant said that he did. The officers then told appellant that they had found the marijuana, and he admitted that it belonged to him.

Appellant was charged with possession of marijuana of more than two ounces and less than four ounces. He filed a motion to suppress evidence. After a hearing, the trial court denied the motion. Appellant pleaded guilty, and the trial court sentenced him to ten days of confinement in the county jail.

On direct appeal, the court of appeals held that the search was justified under the emergency doctrine.[1] On discretionary review to this Court, appellant argues that the open-door call did not justify the police searching his home.

The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.[2] Any such search, however, must be "strictly circumscribed by the exigencies which justify its initiation."[3] If a search is justified under the emergency doctrine, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.[4]

---

[1] *Shepherd v. State*, 230 S.W.3d 738 (Tex. App.–Houston [14th Dist.] 2007).

[2] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

[3] *Id.* at 393 (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968)).

[4] *Laney v. State*, 117 S.W.3d 854, 862 (Tex. Crim. App. 2003)(citing *Mincey*, 437 U.S. at 393).

Unlike the exigent-circumstances exception to the Fourth Amendment's warrant requirement, the emergency doctrine does not apply when the police are carrying out their "crime-fighting" role by conducting a search based on probable cause to gather evidence of a crime.[5] Rather, the doctrine allows the police to engage in conduct that would otherwise violate the Fourth Amendment if they are acting on a reasonable belief that doing so is immediately necessary "to protect or preserve life or avoid serious injury."[6] To determine whether this objective standard of reasonableness is met, we look at the facts that were known to the officers at the time.[7] When assessing whether officers' inference from facts is objectively reasonable, we may consider their training and experience in similar situations.[8]

We review a ruling on a motion to suppress evidence for abuse of discretion.[9] In so doing, we view the facts in the light most favorable to the trial court's decision.[10] We give almost total deference to a trial court's express or implied determination of historical facts and review de novo

---

[5] *Id.* at 858.

[6] *Mincey*, 437 U.S. at 392; *Laney*, 117 S.W.3d at 858.

[7] *Laney*, 117 S.W.3d at 862.

[8] *See United States v. Arvizu*, 534 U.S. 266, 273 (2002)(citing *United States v. Cortez*, 449 U.S. 411, 418 (1980))(noting, for purposes of reasonable suspicion analysis, that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person"); *cf. Wiede v. State*, 214 S.W.3d 17, (Tex. Crim. App. 2007)(citing *Davis v. State*, 202 S.W.3d 149, 156-57 (Tex. Crim. App. 2006))(noting that officer's "specific knowledge that drugs are commonly packaged, carried, or transported in plastic bags" is evidence of reasonableness for purposes of probable cause determination).

[9] *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

[10] *Id.*

the court's application of the law of search and seizure to those facts.[11]

Here, the police received a call from appellant's neighbors saying that they were concerned for appellant's safety because his front door had been left open even though his car was not in his driveway. It was the officers' experience that such a call could lead to discovery of an assault victim in the house. After calling into the house and receiving no response, the officers entered with their guns drawn.

Appellant's brief alleges weaknesses in the police's inference of a risk of injury or death. But on the facts of this case, a reasonable officer could have believed that entering the house was necessary to protect or preserve life, or to avoid a serious injury. Under such circumstances, the Fourth Amendment does not require the police to simply walk away.

We affirm the judgment of the court of appeals.

Filed: September 10, 2008
Publish

---

[11] *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).