Opinion issued December 3, 2009



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00517-CR




JESSE RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1050523




O P I N I O N
 
          Appellant, Jesse Rodriguez, pled guilty, on May 25, 2006, to possessing more
than 4 grams but less than 200 grams of cocaine.


 The plea agreement imposed nine
years’ imprisonment on appellant. Appellant accepted the plea the same day that the
trial court denied his motion to suppress the cocaine. In his sole issue, appellant
argues that cocaine should have been suppressed because the police did not have
authority to be in the home where the cocaine was found, and therefore they did not
have probable cause to search appellant. 
          We affirm.
Background
          Appellant was arrested on December 16, 2005 after calling the police and
requesting that they collect his children from him. Appellant was married, but he had
separated from his wife, Marlene Rodriguez. Marlene and appellant shared custody
of their three children, and, on the night of his arrest, appellant was supervising the
children at his parents’ home while his wife attended a Christmas party. Appellant
expected his wife to collect the children around 11:00 p.m., but she called the house
and asked appellant’s mother if the children could spend the night. Appellant’s
mother apparently consented. When appellant’s wife did not retrieve the children
around the appointed time, appellant began calling his wife and sending her text
messages, which she ignored. Apparently frustrated that his wife was not coming to
collect the children at the agreed time, appellant dialed 911 and asked the police to
come retrieve the children from him.
          Officer D. Flores responded to appellant’s call, which directed him to 1311
Alexander. When Officer Flores arrived, appellant was on the front porch. Although
Officer Flores initially found appellant cooperative and informative, he also
considered appellant to be emotional and believed that appellant was intoxicated.
Officer Flores asked appellant whether he lived at the house. Appellant told him he
and his wife were separated and living in different apartments and that his parents
owned the house at 1311 Alexander. Officer Flores also testified that appellant began
to have frequent mood swings and that the mood swings convinced him to call for
assistance. While speaking with appellant on the front porch, Officer Flores called 
C. Gonzales, appellant’s brother-in-law. Gonzales called appellant’s wife, Marlene,
and explained the situation to her. She left the Christmas party and drove to 1311
Alexander. 
          At some point before Marlene arrived, appellant “stormed” back into the home. 
After appellant had stormed back inside, appellant’s mother, Juana Rodriguez,
appeared on the front porch, Marlene arrived around the same time. Marlene
confirmed that the house belonged to appellant’s parents. Officer J. Harnett received
the officer assist call and likewise arrived at the scene. Officer Flores asked
appellant’s mother, Juana, whether the police could go in the house, and she said
‘yes.’Upon entering the home, Officer Flores and Officer Hartnett found appellant
in the back room with his sleeping children. When Officer Flores and Officer
Hartnett entered the children’s room and approached appellant, he became defensive
and demanded that the officers leave the home. However, Officer Hartnett spoke
with appellant for fifteen minutes and convinced appellant to accompany him outside.
While appellant and Officer Hartnett were leaving the bedroom, appellant asked to
use the restroom. The officers consented, but required appellant to leave the door
open. After using the facilities, appellant walked with the police toward the front
door, but, before reaching the front door, appellant changed his mind and told the
officers they would have to “come get me.”
          Appellant went into the kitchen, positioned himself next to a counter on which
there was butcher block full of knives, and reached behind him. The officers
attempted to restrain appellant to force him to submit. Officer W. Powell, a
supervising officer who arrived after Officer Hartnett, aimed his pistol at appellant. 
Officer Harnett grabbed appellant’s arm, but appellant jerked it away. Officer Flores
pointed his taser at appellant and attempted to get him in a headlock. Following a
struggle, Officer Flores shot appellant with the taser five times. After subduing and
arresting appellant for resisting detainment or arrest, the officers took appellant
outside and searched him. Upon searching appellant, they found the cocaine that
served as the basis for this charge.
          Appellant filed a motion to suppress the cocaine, contending that the police
officers lacked a warrant to search the home and probable cause to search him. On
May 25, 2006, the trial court held a hearing on appellant’s motion. The State called
appellant’s mother, Juana, and Officers Flores, Hartnett, and Powell. The defense
called appellant’s wife, Marlene, and his brother-in-law, Gonzales. After hearing the
evidence and testimony, the trial court denied the motion and made findings on the
record that the testimony of the police officers and Gonzalez was credible. Appellant
pled guilty on the same day that the trial court denied his motion to suppress the
cocaine.
          Appellant appeals the trial court’s denial of his motion to suppress.



Standard of Review
          We review a denial of a motion to suppress for an abuse of discretion. 
Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing State v.
Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When an appellate court
reviews a trial court’s denial of a motion to suppress evidence it must give “almost
total deference to a trial court’s express or implied determination of historical facts 
[while] review[ing] de novo the court’s application of the law of search and seizure
to those facts.” Id. When the trial court has not made findings, we review the facts
in a light most favorable to the trial court’s ruling. Id. Discussion
          In one issue, appellant challenges “whether the warrantless seizure of an
individual inside his residence over his express refusal of consent, can be justified as
reasonable to him on the basis of consent given to police by another.” Appellant
argues that (1) exigent circumstances may overcome the presumption that a
warrantless arrest is illegal, but the exigent circumstances did not exist to justify the
officers’ entry into the house; (2) although consent is an exception to the warrant
requirement, “a physically present inhabitant’s express refusal of consent to a police
search is dispositive as to him regardless of the consent of a fellow occupant”; and
(3) as an overnight guest, he had an expectation of privacy in the home that
authorized him to refuse consent. See Georgia v. Randolph, 547 U.S. 103, 122–23,
126 S. Ct. 1515, 1528–29 (2006). We do not reach the exigent circumstances issue
because we conclude that appellant’s mother had authority to grant the officers
permission to enter the home.
          A.      Consent to Enter
          Consent is among the most well established exceptions to the presumption that
a warrentless search is unreasonable. Johnson v. State, 226 S.W.3d 439, 443 (Tex.
Crim. App. 2007); Brown v. State, 212 S.W.3d 851, 867–68 (Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d). Texas courts recognize that individuals may give their
voluntary consent to have their homes searched and that the police are not required
to have a reasonable suspicion of criminal activity before asking to enter a home. 
Johnson, 226 S.W.3d at 443; State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App.
2002). Generally, “whether consent is voluntary turns on questions of fact and is
determined from the totality of the circumstances.” Johnson, 226 S.W.3d at 443. 
          Unrebutted testimony at the suppression hearing established that appellant’s
mother gave officers permission to enter the house at 1311 Alexander. Appellant
does not challenge his mother’s ownership of the house or her standing, as owner and
resident, to consent to the officers’ entry into the house.


 Nor is there any evidence
to suggest appellant’s mother’s consent to the officers’ entry was anything less than
voluntary. Because we give “almost total deference to a trial court’s express or
implied determination of historical facts,” we conclude that the officers had lawful
authorization from appellant’s mother to enter the house at 1311 Alexander. See
Shepherd, 273 S.W.3d at 684 (holding that appellate courts defer to trial court’s
determination of historical facts in review of suppression hearing). 
          B.      Appellant’s Expectation of Privacy
          Appellant contends, however, that, even if the police had lawful authority from
his mother to enter the home, the police violated his rights under the Fourth
Amendment, which provided him with a reasonable expectation of privacy because
he qualified as an overnight guest. 
          “The Fourth Amendment protects individuals ‘against unreasonable searches
and seizures.’” Luna v. State, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008). A
defendant seeking to suppress evidence under the Fourth Amendment must show that
he had a reasonable expectation of privacy that the government invaded. Id. A
defendant has a legitimate expectation of privacy in the place searched, and therefore
has standing to contest the search, if he has a subjective expectation of privacy in the
place invaded that society is prepared to recognize as reasonable. Granados v. State,
85 S.W.3d 217, 223 (Tex. Crim. App. 2002). Several factors are relevant to whether
a claim of privacy is objectively reasonable: (1) whether the accused had a property
or possessory interest in the place searched; (2) whether he was legitimately in the
place searched; (3) whether he had complete dominion or control and the right to
exclude others; (4) whether, prior to the search, he took normal precautions
customarily taken by those seeking privacy; (5) whether the property was put to some
private use; and (6) whether the claim of privacy is consistent with historical notions
of privacy. Id. 
          The Texas Court of Criminal Appeals has held that “[a]n ‘overnight guest’ has
a legitimate expectation of privacy in his host’s home,” and thus has standing to
complain that he has suffered a Fourth Amendment violation. Luna, 286 S.W.3d at
603; Granados, 85 S.W.3d at 223 (citing Minnesota v. Olson, 495 U.S. 91, 98, 110
S. Ct. 1684, 1688–89 (1990)). However, even if a party has standing under the
Fourth Amendment as an overnight guest, his Fourth Amendment claim may fail on
its merits. Luna, 286 S.W.3d at 603. In particular, “a third party may properly
consent to a search when she has control over and authority to use the premises being
searched.” Id. at 604 (holding that trial court did not err in denying motion to
suppress evidence obtained as result of warrantless search of apartment to which third
party with control and authority had validly consented when third party denied
appellant lived with her and explained that he stayed with her only “on and off” and
appellant stated that he lived elsewhere).
          Here, appellant’s status as an overnight guest is questionable. Appellant, his
wife, and his mother all stated that appellant lived elsewhere. While the evidence
indicated that appellant stayed at the home “at least sometimes,” the record does not
indicate whether, on the night of his arrest, appellant intended to spend the night at
1311 Alexander. It does, however, indicate that appellant and his wife lived there
before they separated, that appellant’s wife believed that he stayed at 1311 Alexander
on some nights and at a girlfriend’s apartment on other nights, and that the police
never determined where appellant lived, even after his arrest. 
          Assuming, therefore, without deciding that these factors are sufficient to
establish appellant’s standing to complain of the invasion of his right to privacy as
an overnight guest, we nevertheless hold that any expectation of privacy appellant
had in his mother’s house was overridden by his mother’s valid consent to the police
to enter. See Luna, 268 S.W.3d at 604 (where search of apartment was supported by
owner’s valid consent, trial court did not err in denying appellant overnight guest’s
motion to suppress evidence obtained as result of warrantless search).
          Appellant relies on Georgia v. Randolph to claim that he had the authority to
demand that the police leave the property, even after his mother, the owner of the
property, consented to their entry and that their failure to do so made the cocaine they
recovered from him inadmissible. Randolph, 547 U.S. at 108–09, 126 S. Ct. at 1520. 
Randolph addressed the question of whether evidence can be lawfully admitted if the
evidence is seized in the face of an objection from a person who is physically present
for the search and who shares equal authority with the person who authorized the
search. Id. at 106, 126 S. Ct. at 1518–19. In appellant’s case, the trial court found
that appellant did not live at 1311 Alexander, and thus appellant, unlike the defendant
in Randolph, did not have equal control over the property. See Luna, 268 S.W.3d at
604 n.26 (distinguishing status of defendant in Randolph from status of overnight
guest, who does not share equal authority over property with property owner). 
Because appellant lacked authority to prevent the police from entering the house after
his mother, who owned the property and lived there, validly consented to their entry,
Randolph does not apply. See id. 
          We hold that the police did not violate appellant’s Fourth Amendment right to
privacy by entering the house at 1311 Alexander.
          C.      Seizure of the Cocaine
          Lastly, appellant contends that the police officers violated his Fourth
Amendment rights by searching him and seizing the cocaine. After being admitted
to the home and discovering appellant in the bedroom with his children, the officers
spent approximately fifteen minutes talking with appellant. They convinced him to
leave the children’s bedroom and to go outside and speak with them. After appellant
left the bedroom voluntarily and used the bathroom, he changed his mind, refused to
go outside, went into the kitchen, and reached behind him towards a butcher block
full of knives. Appellant fought off the officers’ attempt to restrain him from
reaching the knives, and he resisted being subdued and detained. After subduing and
arresting him, the officers conducted a search subsequent to arrest and discovered the
cocaine. A search subsequent to arrest is valid. McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App. 2003) (citing United States v. Robinson, 414 U.S. 218, 236, 94 S.
Ct. 467, 477 (1973)). 
          We overrule appellant’s sole issue.Conclusion
          We affirm the judgment of the trial court.


 



                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Keyes, Alcala, and Hanks.
Publish. Tex. R. App. P. 47.2(b).