NO. 07-10-00084-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



SEPTEMBER
14, 2010

 



 

STEVE A. LIVELY, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2006-414,581; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

After the trial court denied his
motion to suppress evidence, appellant, Steve A. Lively, pleaded guilty to two
counts of aggravated assault with a deadly weapon[1]
pursuant to a plea bargain.  Per the
terms of the plea bargain, he was sentenced to serve two concurrent
fifteen-year sentences.  He now appeals
the trial court’s denial of his motion to suppress.  We will affirm.

 

 

Factual and Procedural History

            A
man at a convenience store flagged down Corporal Misti
Snodgrass of the Lubbock Police Department and alerted her that a boy had been
begging for money and food outside the store. 
Snodgrass found the boy, in his early to mid-teens, at the side of the
store.  She noticed his thin, pale, and
bruised condition and talked with him for some time to determine where he
lived.  The boy appeared confused or
mentally slow, not able or willing to identify himself correctly or to direct
Snodgrass to his residence.  He explained
that his parents had returned to Tennessee and left him in Lubbock.

            Corporal
Steve McClain joined Snodgrass at the convenience store.  McClain invited the boy into his car and was
driving him around an area of town that might be his neighborhood, according to
the boy’s unclear explanation, when the boy asked to be let out of the car and
told McClain he could walk home from that point.  McClain let him out of the car, and the
officers followed him.  The boy
eventually turned into a residential alleyway. 
Still following behind him, the officers then encountered two men, one
being appellant, the boy’s father.  It
was only then that the officers were able to definitively identify the boy as
appellant’s son, Danny.  Appellant
explained to Snodgrass and McClain that Danny had been injured when he got into
a fight with another juvenile.  The
officers left the scene, having accepted the explanation as somewhat
reasonable.  Snodgrass explained,
however, that she had lingering, instinctual concerns about Danny’s welfare.

            Five
days later, Snodgrass received a dispatch requesting that the police check on a
male in his early to mid-teens who was walking
barefooted down the interstate.  Upon her
arrival, Snodgrass initially thought that the juvenile was Danny.  This boy identified himself as Joe, Danny’s
younger brother, and bore a strong resemblance to Danny.  Like Danny, Joe was thin, pale, and bore
several sores, marks, and bruises.  Joe,
too, told Snodgrass that his parents had gone back to Tennessee and left him in
Lubbock.  After Snodgrass learned that
this was Danny’s brother, she immediately became concerned for the welfare of
both Danny and Joe.

            Joe
appeared more alert than Danny and seemed less confused but more evasive about
his address.  Joe attributed his injuries
to having undertaken a dare.  Snodgrass
persuaded Joe to get in her car so that they could, at least, get off the
interstate highway.  When Joe provided an
address Snodgrass knew to be incorrect, it struck Snodgrass that the boy did
not want to return to his house.  Her
observation was confirmed when, having remembered the house to which Danny had
returned, Snodgrass returned to the Lively
residence.  Upon approaching the
residence, Joe became scared and hesitant and ducked down in the back seat of
the police car.

            On
their way to the residence, Snodgrass contacted Child Protective Services (CPS)
and requested that her supervisor, Dale Gregg, and Corporal McClain come to the
residence.  She also contacted emergency
medical services (EMS), requesting that they, too, respond to the Lively residence.

            Gregg
and McClain joined Snodgrass at the residence, and the officers approached the
house as Joe remained in the police car. 
EMS was en route to the residence. 
An older step-brother, Josh, answered the officers’ knocks and indicated
that Danny was not at home, that he was out looking for Joe.  Likewise, according to Josh, appellant was
also out looking for Joe.  The officers
asked to come in to check on Danny and other occupants.  In response, the “uncooperative” and “angry”
Josh[2]
denied their request, suggested they get a warrant, and attempted to close the
door.  One of the officers kept a foot in
the door, and the officers removed Josh from the doorway and placed him in
handcuffs for officer safety.

            The
officers made entry into the residence and identified the other two individuals
in the living room.  McClain remained in
the living room with Josh and the two other occupants as Snodgrass and Gregg
moved on to check the rest of the house for other people.  After clearing the kitchen, the two officers
searched for individuals in the bedrooms. 
In one of the bedrooms, they found Danny who still appeared battered and
bruised.  As Snodgrass began to talk to
Danny to determine his condition, EMS arrived at the residence.  Snodgrass went outside to allow EMS to assess
Joe’s condition and to speak further with Joe. 
During this conversation, Joe told Snodgrass that he and Danny had been
beaten and burned with a battery charger for a radio-controlled device.  Snodgrass observed that the marks and burns
on Joe’s body were consistent with abuse by such a device.  She re-entered the Lively
house, located the charger, and seized it from the floor of the bedroom in
which Danny was located despite Josh’s attempts to conceal the charger by
throwing clothing over it.

            Appellant
was charged with four counts of aggravated assault with a deadly weapon.  After the trial court denied his motion to
suppress, appellant pleaded guilty to two of those counts.  Pursuant to a plea bargain, the trial court
sentenced appellant to fifteen years incarceration and dismissed the other two
counts pending against him.

            Appellant
contends that the trial court abused its discretion by denying his motion to
suppress on two bases: (1) the officers’ belief that an emergency situation
existed was not reasonable, and (2) probable cause and exigent circumstances
did not exist to justify entry into appellant’s home.

Standard of Review

            We
review a trial court’s ruling on a motion to suppress evidence for an abuse of
discretion.  Shepherd v. State,
273 S.W.3d 681, 684 (Tex.Crim.App. 2008).  In so doing, we view the facts in the light
most favorable to the trial court’s decision. 
Id.  We give almost total
deference to a trial court’s express or implied determination of historical
facts and review de novo the trial court’s application of
the law of search and seizure to those facts. 
Id.  We will sustain the
admission of the evidence if admission is reasonably supported by the record
and correct on any theory of law applicable to the case.  Laney v. State, 117
S.W.3d 854, 857 (Tex.Crim.App. 2003).

Analysis

            Appellant
maintains that the officers in the instant case entered the Lively home for the
following five reasons:  (1) to
investigate, (2) to gather evidence, (3) search for further victims, (4)
establish suspects, and (5) to determine the well-being of Danny.  He contends that four of those five
motivations directly involve the officers’ roles as law enforcement, not
directly related to the care and concern for Danny.  “Clearly,” he asserts, “the officers’ actions
here were at least partially motivated by their desire to investigate the cause
of the injuries to Danny and Joe.” 
Appellant maintains that the officers had no reasonable basis for
believing that Danny was in the home or that he was in need of assistance prior
to their entry.  

            He
maintains that the warrantless entry into the house is not supported by either
the emergency doctrine or the exigent circumstances exception to the warrant
requirement.  According to appellant, the
officers entered the residence with “mixed motivations.”  Therefore, because the officers were not
acting solely in their roles as community caretakers,[3]
the emergency doctrine will not support the warrantless entry.  He contends the State also failed to show
that the exigent circumstances exception applied to justify the warrantless
entry because the State failed to demonstrate that the officers entered with
probable cause and failed to show that exigent circumstances existed at the
time of the entry.  We will uphold the
trial court’s ruling on the motion to suppress if it is correct under any
theory applicable to the case.  See
id.  With that in mind, we turn to
the application of the exception to the warrant requirement that permits a
warrantless search when police have probable cause with exigent circumstances.[4]

Exigent Circumstances Exception

            A
warrantless search of a private location will withstand judicial scrutiny if
the State establishes the existence of probable cause to enter or search the
specific location combined with the existence of exigent circumstances.  Gutierrez v. State,
221 S.W.3d 680, 685 (Tex.Crim.App. 2007); Estrada
v. State, 154 S.W.3d 604, 608–09 (Tex.Crim.App.
2005); McNairy v. State, 835 S.W.2d 101, 106–07 (Tex.Crim.App.
1991).  Probable cause exists when
reasonably trustworthy facts and circumstances within the knowledge of the
officer on the scene would lead a person of reasonable prudence to believe that
the instrumentality or evidence of a crime will be found.  Gutierrez, 221
S.W.3d at 685; Estrada, 154 S.W.3d at 609.  Probable cause is “the sum total of layers of
information, and not merely individual layers and considerations, that a
reasonable and prudent man acts upon.”  Estrada,
154 S.W.3d at 609 (quoting Brinegar v.
United States, 338 U.S. 160, 176, 69 S.Ct. 1302,
93 L.Ed. 1879 (1949)).  Exigent circumstances involve a situation in
which it is impracticable to secure a warrant. 
See Adkins v. State, 726 S.W.2d 250, 251 (Tex.App.—El Paso 1987), aff'd,
764 S.W.2d 782 (Tex.Crim.App.1988). 
Exigent circumstances include the following: (1) providing assistance to
those whom the officers reasonably believe are in need of assistance; (2)
protecting police officers from those whom they reasonably believe to be
present, armed, and dangerous; and (3) preventing the destruction of evidence
or contraband.  Gutierrez, 221 S.W.3d at 685.

            We
use an objective standard to determine whether the officers reasonably relied
upon the exigency in question to justify a warrantless entry.  Stuart, 547 U.S. at 404.  A police officer’s subjective motivation is
irrelevant in determining whether the officer’s actions violated the Fourth
Amendment.  Id.  “An action is ‘reasonable’ under the Fourth
Amendment, regardless of the individual officer’s state of mind, ‘as long as
the circumstances, viewed objectively, justify [the] action.’”  Id. 
The Texas Court of Criminal Appeals has similarly held that whether a
warrantless search runs afoul of the Fourth Amendment “turns on an objective
assessment of the officer’s actions in light of the facts and circumstances
confronting him at the time, and not on the officer’s actual state of mind at
the time the challenged action was taken.” 
O’Hara v. State, 27 S.W.3d 548, 551 (Tex.Crim.App.
2000) (quoting Maryland v. Macon, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed. 2d 370
(1985)).  When assessing whether the
officer’s inference from facts is objectively reasonable, we may consider his
or her training and experience in similar situations.   See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct.
744, 151 L.Ed. 2d 740 (2002)
(noting, for purposes of reasonable suspicion analysis, that officers may “draw
on their own experience and specialized training to make inferences from and
deductions about the cumulative information available to them that might well
elude an untrained person”).

Discussion

            Snodgrass
conceded that the officers entered the Lively
residence before Joe revealed that they had been abused, but she maintained
that the boys’ conditions, their shared residence, and their reluctance to
return to that residence gave the officers probable cause to believe that there
was physical abuse being committed in the household.  We agree.

            At
the time of the officers’ entry, they knew that one brother was begging for
food and money and appeared to be very thin. 
He had several bruises and discolorations on his face.  Five days later, his brother was found
walking barefooted down the interstate highway. 
When Snodgrass approached him, she noticed a striking resemblance
between the two brothers, not just in their physical features but also in the
type and degree of their injuries.  Both
brothers appeared to have extensive bruises and burns.  Both brothers seemed hesitant to return to
the house.  In fact, Joe hid in the
backseat of the police car upon nearing his house.  Each brother had a different explanation for
the source of their injuries.  The
officers noted that some of the injuries appeared to have been more recently
inflicted while others appeared to have been inflicted earlier in time,
suggesting that there was likely an ongoing source of the injuries.  Based on such information, the officers had
probable cause to believe that the instrumentality or evidence of a crime would
be found in the residence.  See Gutierrez,
221 S.W.3d at 685.

            When
asked whether she could have just dropped Joe off at his house, Snodgrass
responded that, considering what she had observed, she “could not have done
that.”  As the trial court pointed out,
we would not want a police officer to have done so in this situation: “If they
have information that leads them to believe that some child’s welfare is in
danger, I want them checked on.”  The
United States Supreme Court has also recognized this aspect of a police
officer’s role:

No question has been raised, or reasonably could be, about the
authority of the police to enter a dwelling to protect a resident from domestic
violence; so long as they have good reason to believe such a threat exists, it
would be silly to suggest that the police would commit a tort by entering . . .
to determine whether violence (or threat of violence) has just occurred or is
about to (or soon will) occur.

Georgia
v. Randolph, 547
U.S. 103, 118, 126 S.Ct. 1515, 164 L.Ed.2d 208
(2006).            

            Considered
in light of the officers’ training and experience, the brothers’ injuries,
their physical appearance, their demeanor, the fact that each boy’s injuries
appeared to signal ongoing abuse, their inconsistent explanations of the source
of those injuries, and their reluctance to return to their home presented the
officers with sufficient information for the officers to form an objectively reasonable
belief that Danny or another person in the household was in need of
assistance.  Such reasonable belief is a
recognized exigent circumstance.  See
Gutierrez, 221 S.W.3d at 685.

            Appellant
points out that the officers initially left Danny after their encounter and did
not seek entry into the house on the basis of probable cause and exigent
circumstances.  We do not think that this
inaction undermines the determination following the second encounter when Snodgrass
saw similar, extensive injuries on Joe. 
Snodgrass’s previous encounter with Danny added another “layer or
element” to her probable cause determination in the subsequent interaction with
Joe.  See Estrada, 154 S.W.3d at 609. 
What may have seemed reasonable during the first encounter became
suspicious upon the revelation of a new layer of information during the second
encounter.  The information gathered,
observations made, and conclusions drawn during the second encounter lent
themselves to a clearer and different understanding of the previous encounter
with Danny.  And the previous encounter
lent itself to the exigency of the later situation.

Conclusion

            When,
within five days’ time, two brothers who lived in the same household, bore
similar and significant signs of physical abuse, and were reluctant or scared
about returning to the house, the officers had probable cause to believe that
evidence of a crime would be found in the house.  The officers’ objectively reasonable concerns
regarding the well-being of the victims and other household members serve as
the type of exigency that justifies the officers’ warrantless entry into the
residence.

            We
overrule appellant’s issues and, accordingly, affirm the trial court’s
judgment.

 

                                                                                                Mackey
K. Hancock

                                                                                                                        Justice

Do not publish.  

            











[1]
See
Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2009).





[2] Though not well-developed in the record, there is
evidence suggesting that Josh, among others, had taken part in the abuse of Danny
and Joe.  The investigation that followed
the entry into the house revealed that the boys may have been abused with
baseball bats, were made to sleep on the concrete floor of the garage, and were
forced to eat habanero peppers.  The officers also learned that Tennessee’s
equivalent to CPS had been investigating the Lively
household before the family moved to Lubbock.





[3]
Appellant relies on the distinction between the
“roles” in which an officer acts under the emergency doctrine and exigent
circumstances exception: “The exigent circumstances doctrine applies when the
police are acting in their ‘crime-fighting’ role. . . . [T]he emergency
doctrine applies when the police are acting, not in their ‘crime-fighting’
role, but in their limited community caretaking role to ‘protect or preserve
life or avoid serious injury.’”  Laney,
117 S.W.3d at 861. 
We note, however, that this distinction may no longer be a viable one in
light of Brigham City v. Stuart, 547 U.S. 398, 404–05, 126 S.Ct. 1943, 164 L.Ed. 2d 650
(2006), in which the United States Supreme Court rejects the inquiry into an
individual officer’s state of mind:

It therefore does not matter here–even if their subjective motives
could be so neatly unraveled–whether the officers entered the kitchen to arrest
respondents and gather evidence against them or to assist the injured and
prevent further violence.

Id. at 405.  Stuart outlines a more holistic inquiry
into whether the officer’s actions were objectively reasonable under the
circumstances, regardless of the subjective intent of the officer as crime
fighter or community caretaker.  Id. at 404–05. 


 





[4]
That is not to say that we conclude the
officers’ warrantless entry was not justified under the emergency exception as
discussed in Stuart, 547 U.S. at 404–05, Shepherd, 273 S.W.3d at 683–84,
and Laney, 117 S.W.3d at 862–63. 
Because an analysis of the application of the emergency exception is not
“necessary to final disposition of the appeal,” we expressly decline to address
that matter.  Tex. R. App. P. 47.1.