

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00416-CR

ROBERT OTHELLA JAMES LEWIS          APPELLANT
A/K/A ROBERT LEWIS

V.

THE STATE OF TEXAS          STATE

----------

## FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1299359D

----------

## OPINION

----------

Appellant Robert Othella James Lewis appeals from his conviction for driving while intoxicated (DWI) and from his five-year sentence. We reverse the trial court's order denying Lewis's pretrial motion to suppress and judgment and remand the case to the trial court for further proceedings.

# I. BACKGROUND

Late at night on July 17, 2012, Officer Jose Lopez saw a car speeding, and then it failed to stop at a stop sign. Lopez began following the car and saw the car "fail to maintain a single lane of travel . . . straddl[ing] some of the lines." Lopez pulled over the car. Lewis was the driver and sole occupant of the car and informed Lopez that he did not have any identification. Lewis was uncooperative and exhibited slurred speech and "watery, red eyes." Lopez smelled a "strong smell of an alcoholic beverage" on Lewis's breath. After initially refusing to get out of his car, Lewis eventually got out after Lopez pointed his Taser at him. Lewis also refused to perform any field-sobriety tests.

Lopez then arrested Lewis, but Lewis would not put his hands behind his back as requested. Lewis refused five times to put his hands behind his back, and Lopez eventually fired his Taser at Lewis after warning him that he would do so if Lewis would not comply. After being hit by the Taser, Lewis fell and hit his head on the ground. Lopez called for an ambulance, but Lewis refused medical attention at the scene. Lopez handcuffed Lewis. At this point, Lopez found Lewis's identification in his wallet and subsequently discovered that Lewis had two prior DWI convictions. As statutorily authorized, Lopez then took Lewis to the hospital for a mandatory blood draw without first obtaining a warrant. *See* Tex. Transp. Code Ann. § 724.012(b)(3) (West 2011). At the hospital, Lewis began cursing very loudly, threatened to kick hospital staff members in the face if they drew his blood, and had to be held down by two officers and several hospital

staff members.  The blood test revealed that Lewis had a blood-alcohol content of .27, which is more than three times above the legal limit.  *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

A grand jury indicted Lewis for DWI and included a felony-repetition paragraph alleging that Lewis had twice previously been convicted of DWI.  *See id.* §§ 49.04(a), 49.09(b) (West Supp. 2014).  Before trial, Lewis filed a motion to suppress the blood-alcohol results because there were no exigent circumstances or any other exception to the constitutional warrant requirement; thus, Lewis argued that the blood-alcohol results, which were obtained without a warrant, were inadmissible.  *See generally McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.) (delineating three exceptions to search-warrant requirement), *cert. denied*, 540 U.S. 1004 (2003).

The trial court held an evidentiary hearing on the motion at which Lopez testified that he did not consider obtaining a warrant to draw Lewis's blood, although he knew how to do so, and that he had Lewis's blood drawn under the authority of section 724.012.  The trial court concluded that no exigent circumstances justified the warrantless blood draw but that the blood draw nevertheless was authorized by section 724.012; thus, the trial court held the blood-alcohol results admissible even in the absence of a warrant and denied the motion.[1]  The blood-alcohol results were admitted at trial, and a jury found Lewis

---

[1]Although the trial court stated at the hearing that it would be entering findings of fact and conclusions of law, the clerk's record does not include

3

guilty of DWI. After a punishment hearing, the jury assessed his punishment at five years' confinement.

## II. DISCUSSION

### A. ABUSE OF DISCRETION

We review the denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v.* State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). Therefore, we view the facts in the light most favorable to the trial court's decision, giving almost total deference to the trial court's express or implied determination of historical facts, and review de novo the court's application of the law of search and seizure to those facts. *Id.*

Lopez did nothing wrong at the time he had Lewis's blood drawn without a warrant based on the authority of section 724.012. Similarly, the trial court understandably held that the statute specifically authorized the blood draw and was, in effect, an exception to the warrant requirement. However, the court of criminal appeals recently held that the provisions in the transportation code allowing warrantless blood or breath samples to be taken without consent, including section 724.012, are alone not "a constitutionally valid alternative to the Fourth Amendment warrant requirement." *State v. Villarreal*, No PD-0306-14, 2014 WL 6734178, at *20 (Tex. Crim. App. Nov. 26, 2014) (5–4 opinion), *reh'g*

findings or conclusions. In recounting the trial court's rulings, we are relying on the trial court's statements in the reporter's record from the motion-to-suppress hearing.

4

*granted*, No. PD-0306-14 (Feb. 25, 2015). Here, the State did not argue any exception to the warrant requirement justified the warrantless search and relied solely on section 724.012. Indeed, the trial court recognized there were no exigent circumstances dispensing with the warrant requirement. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1563, 1568 (2013) (holding natural metabolization of alcohol in the bloodstream does not present a per se exigency justifying exception to warrant requirement for nonconsensual blood testing in DWI cases). Further, Lopez's good-faith belief that the statute authorized the warrantless search does not overcome the exclusionary rule. *See Burks v. State*, No. 02-13-00560-CR, 2015 WL 115964, at *3 (Tex. App.—Fort Worth Jan. 8, 2015, no pet.). Based on *Villarreal*, the trial court erred in its application of the law to the facts and, thus, by denying Lewis's motion to suppress.

### B. HARM ANALYSIS

We review the harm resulting from a trial court's erroneous denial of a motion to suppress and subsequent admission of evidence obtained in violation of the Fourth Amendment under the constitutional harmless-error standard. Tex. R. App. P. 44.2(a); *see Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (mandating application of rule 44.2(a) to harm analysis of trial court's erroneous denial of motion to suppress under the Fourth Amendment). This standard requires us to reverse the trial court's judgment of conviction unless we "determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Our primary question is

5

whether there is a reasonable possibility that the error might have contributed to the conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). In other words, we calculate the probable impact the evidence had on the verdict in light of the other evidence. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001*, cert. denied*, 536 U.S. 972 (2002).

Here, the blood-alcohol results were introduced through the testimony of a forensic toxicologist, Joyce Ho.[2] She testified that Lewis's blood-alcohol content was .27. The chief toxicologist, Robert Johnson, testified that .27 was over the legal limit of .08 and that such a blood-alcohol level could result in unconsciousness or abnormal "walking and talking." Johnson also stated that it was possible Lewis's blood-alcohol content was higher than .27 at the time Lopez stopped him based on retrograde extrapolation. During closing jury arguments, the State recognized that Lewis's demeanor and odor of alcohol were "signs that he was intoxicated." But the State continued that the "clearest" sign of intoxication was his blood-alcohol content:

> [Lewis's impaired physical and mental condition is] not the clearest reason why we know [Lewis was legally intoxicated]. Because remember there's three ways in which you can find that the defendant was intoxicated that night. . . . And the third way is that

---

[2]The State does not argue that Lewis's failure to object to the admission of the blood-alcohol results on the basis of the Fourth Amendment at trial resulted in a waiver of his motion-to-suppress arguments, and we do not construe it to be so in the context of this case. *See Thomas v. State*, 408 S.W.3d 877, 885–86 (Tex. Crim. App. 2013).

> he had . . . a blood alcohol content of over .08 percent. Well, in this case he had a blood-alcohol content of .27 percent . . . .
>
> . . . .
>
> That's three times the legal limit. Three times. We know he was intoxicated.

Although there was other evidence of Lewis's intoxication—bloodshot eyes, an odor of alcohol, slurred speech, and his refusal to perform field-sobriety tests— we cannot conclude beyond a reasonable doubt that the blood-alcohol evidence did not contribute to the jury's verdict. The evidence that Lewis's blood-alcohol content was three times the legal limit had a probable impact on the verdict even in light of the other evidence indicating intoxication, and there is a reasonable possibility that the error might have contributed to Lewis's conviction or punishment. *See, e.g., Cole v. State*, No. 06-13-00179-CR, 2014 WL 7183859, at *10 (Tex. App.—Texarkana Dec. 18, 2014, pet. filed); *cf. Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544, at *4 (Tex. App.—Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication) (holding admission of blood-alcohol evidence harmed defendant because court could not conclude erroneous denial of motion to suppress did not influence defendant's decision to plead guilty). Indeed, the State stressed that Lewis's blood-alcohol content was the

"clearest" indicator that Lewis was legally intoxicated. We sustain Lewis's first issue. [3]

## III. CONCLUSION

Because we hold that the trial court erred by denying Lewis's motion to suppress and that there is a reasonable possibility that this constitutional error might have contributed to Lewis's conviction or punishment, we reverse the trial court's order denying Lewis's motion to suppress and the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

PUBLISH

DELIVERED: March 12, 2015

---

[3]Because our conclusion regarding Lewis's first issue results in reversal of the trial court's judgment, we need not address Lewis's second issue raising jury-selection error. *See* Tex. R. App. P. 44.2(a), 47.1.