

# NUMBER 13-20-00066-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ORLANDO GONZALES,                                                                     Appellant,

v.

THE STATE OF TEXAS,                                                                    Appellee.

## On appeal from the 290th District Court
## of Bexar County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Orlando Gonzales appeals his conviction for felon in possession of a

firearm, a third-degree felony.[1] *See* TEX. PENAL CODE ANN. § 46.04(a), (e). After a jury

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

was empaneled, the trial court heard and denied Gonzales's motion to suppress evidence obtained through a warrantless search. Following the denial, Gonzales entered into a plea bargain where, in exchange for his guilty plea, the State dropped the enhancements to the offense and requested punishment be assessed at no more than eight years of confinement. The trial court approved the plea bargain but sentenced Gonzales to six years of confinement in the Institutional Division of the Texas Department of Criminal Justice. By a single issue, Gonzales argues the trial court erred when it denied his motion to suppress. We affirm.

## I.    BACKGROUND

According to San Antonio Police Department (SAPD) Officer Alice Portillo, on February 11, 2018, Gonzales's mother, Jeanette Espinoza, was flagged down while driving by a man claiming his brother was murdered in Gonzales's home. Espinoza then contacted law enforcement and requested a welfare check for her son. Officer Portillo made contact with Espinoza, who explained what she had heard and what her concerns were. Among the information Espinoza gave to Officer Portillo was that Gonzales had a warrant for his arrest. Officer Portillo confirmed that Gonzales had an active arrest warrant for deadly conduct.[2]

According to Officer Portillo's body-cam footage, at 9:46 p.m., Officer Portillo contacted her supervisor, Sergeant Rodriguez, who advised her to call criminal investigation division (CID) while he went to Officer Portillo's location. Officer Portillo called CID immediately after she ended the phone call with her supervisor at 9:52 p.m.

---

[2] Officer Alice Portillo testified that she was not sure whether the warrant was for misdemeanor or felony deadly conduct, but her the recording from body-worn camera demonstrated that the warrant was for felony deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05(e).

2

CID advised Officer Portillo they did not have any information about an investigation on the property, but that Espinoza could call the homicide division in the morning. Officer Portillo's phone call with CID ended at 9:59 p.m. After Officer Portillo contacted CID, Sergeant Rodriguez arrived at Officer Portillo's location and advised Officer Portillo to perform a "knock and talk." Officer Portillo requested additional units for assistance and conducted a briefing with them prior to going to Gonzales's home. Officer Portillo clarified that the purpose of the welfare check was to "make sure that everybody in the house [was] okay and [did not] need [their] assistance [didn't] need any medical assistance or police assistance." Officer Portillo and several officers met at a nearby gas station for briefing to ensure all officers were "on the same page."

Upon arriving at the home at 10:21 p.m., SAPD Officer Adam Rule noted that the home had no electricity, and a considerable amount of construction debris was piled up outside of the home.[3] Gonzales's father was sitting on the front porch alone and appeared heavily intoxicated. The door to the home was open but not fully ajar. After entering the home, Officer Rule located Gonzales who was in a room with a body on the floor.[4] Officer Rule secured Gonzales in handcuffs while the remaining officers continued to clear the property. Once they were outside of the property, Officer Rule asked Gonzales if he had any weapons on him to which Gonzales responded affirmatively. Officer Rule found and secured a firearm and Gonzales was placed under arrest for felon in

---

[3] During an exchange regarding the time of entrance, Gonzales's counsel stated to Officer Adam Rule that the time stamp read "21:13" at the time of entrance. Officer Rule testified that 21:13 would be 9:13 p.m. However, the time stamp actually read "T03:21:13Z," which Officer Rule subsequently testified was "zulu time" that is based on the prime meridian. Accordingly, as clarified, the time was 10:21 p.m., central daylight time.

[4] Gonzales was not suspected of or charged with the murder of the individual who was discovered in the home.

3

possession of a firearm.

Officer Rule testified that the main goal of the visit "was to ensure the welfare of [Gonzales]" and "that [there was] no one dead inside." Officer Rule acknowledged that he did not have information that Gonzales lived in the residence or was home at the time SAPD went to the home, beyond Espinoza's report to law enforcement. Officer Rule also confirmed that SAPD was not briefed as to Gonzales's employment schedule, general comings and goings, or what vehicle, if any, he drove.

Prior to trial, Gonzales filed a motion to suppress the evidence recovered following a warrantless search that led to the discovery of a firearm in his waistband. However, Gonzales elected to wait until a jury was selected and sworn in prior to presenting the motion to the trial court. After the jury was sworn in, the trial court conducted a hearing on the motion to suppress outside the presence of the jury. At the conclusion of the hearing, the trial court denied Gonzales's motion and he accepted the State's plea offer.

At the plea bargain hearing, the trial court admonished Gonzales:

[Court]:      Did [your attorney] advise you that you'll be allowed—it looks like that because this is a plea bargain case but you still will be allowed to follow [sic] a motion in regards to any motions— any issues that were raised before trial—

[Gonzales]:   Yes, Your Honor.

[Court]:      —is that your understanding?

[Gonzales]:   (Moving head up and down)

[Court]:      Okay. And that you have a limited right to appeal?

[Gonzales]:   Yes, Your Honor.

At the sentencing hearing, held almost one month later, the trial court issued the following ruling:

[Court]: Mr. Gonzales, I'm going to find you guilty of felon in possession of a firearm. I'm going to assess six years in the Texas Department of Corrections. I'll give you credit for whatever time that you have already served in. I believe because you raised the motion pretrial you still have some issues for appeal.

Gonzales filed a motion for new trial and notice of appeal on November 25, 2019. Gonzales's notice of appeal stated that he "hereby gives notice that he desires to appeal on the basis that the substance of the appeal was raised by written motion and ruled on before trial and the trial court has granted permission for the Defendant to appeal." The trial court's certification of Gonzales's right to appeal was signed and filed by the trial court the same day as Gonzales's notice of appeal. The trial court certified that the case "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal[.]" Because the record was unclear as to Gonzales's right to appeal, we abated this appeal on April 15, 2021, and remanded the case back to the trial court for clarification on whether Gonzales retained the right to appeal. On June 2, 2021, we received an amended certification of defendant's right of appeal that indicated the trial court gave Gonzales permission to appeal.

## II.    JURISDICTION

Before considering the substance of Gonzales's appeal, we must first consider the State's assertion that we lack jurisdiction over the appeal. An appellate court's jurisdiction in a plea bargain case is governed by Texas Rule of Appellate Procedure 25.2(a)(2). TEX. R. APP. P. 25.2(a)(2); *Pena v. State*, 323 S.W.3d 522, 525 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). "In a plea bargain case . . . a defendant may appeal only: (1) those matters that were raised by written motion filed and ruled on before trial, (2) after

5

getting the trial court's permission to appeal, or (3) where the specific appeal is expressly authorized by statute." TEX. R. APP. P. 25.2(a)(2). Absent one of the permissible avenues for appeal, this court has no jurisdiction to consider an appeal in a plea bargain case. *Pena*, 353 S.W.3d at 527.

A trial court's certification of a defendant's right to appeal is defective if it erroneously certifies that a defendant does have the right to appeal when he does not. *Jones v. State*, 488 S.W.3d 801, 804–05 (Tex. Crim. App. 2016); *Pena*, 323 S.W.3d at 526 (citing *Dears v. State*, 154 S.W.3d 610 (Tex. Crim. App. 2005)). "If the certification is defective, then [the defendant] does not have the right to appeal his conviction, and we do not have jurisdiction." *Pena*, 353 S.W.3d at 526 (citing *Morgan v. State*, 185 S.W.3d 535, 538 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd)). However, we may also use our discretion to determine if it is appropriate to require a new certification under the rules of appellate procedure. *Dears*, 154 S.W.3d at 614 (concluding "that an appellate court has the ability to examine a certification for defectiveness, and to use Rules 37.1 and 34.5(c) to obtain another certification, whenever appropriate."); *see* TEX. R. APP. P. 34.5(c), 37.1. "It is appropriate to order a trial judge to amend a certification of appeal when a procedural error 'abridge[s]' a defendant's right to appeal." *Nunez*, 323 S.W.3d at 526 (quoting *Dears*, 154 S.W.3d at 614).

Here, although Gonzales asserted in his notice of appeal that the substance of his appeal was raised by written motion and ruled on before trial, such a statement is not supported by the record. Though Gonzales filed his motion to suppress prior to trial, the motion was not heard or ruled on until after the trial began. *See Ramirez v. State*, 611 S.W.3d 645, 649 n.2 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("Generally, a

criminal trial on the merits begins when the jury is impaneled and sworn."); *see also* TEX. R. APP. P. 25.2(a)(2)(A) (requiring that the appealable issue be "raised by written motion filed and *ruled on before trial*") (emphasis added). Accordingly, rule 25.2(a)(2)(A) is not a viable avenue for Gonzales's appeal. *See* TEX. R. APP. P. 25.2(a)(2)(A).

Although Gonzales asserted that the trial court granted him permission to appeal, the record was unclear. *See Mitich v. State*, 47 S.W.3d 137, 140 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) ("A notice of appeal does not confer jurisdiction simply by stating that the trial court granted permission; this statement must also be shown to be true."); *see also* TEX. R. APP. P. 25.2(a)(2)(B). Here, the trial court noted it "believe[d] because [Gonzales] raised the motion pretrial[,] [he] still ha[d] some issues for appeal." Accordingly, we remanded this case back to the trial court for clarification on the defendant's right to appeal. *See* TEX. R. APP. P. 34.5(c), 37.1. The trial court issued a new certification, clarifying that it did in fact give Gonzales permission to appeal. *See id.* R. 25.2(a)(2)(B). Accordingly, after receiving the amended certificate of Gonzales's right to appeal, we conclude Gonzales has the right to appeal under rule 25.2(a)(2)(B), and thus, we have jurisdiction over the appeal. *See id.*

### III.     MOTION TO SUPPRESS

### A.     Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review; fact findings are reviewed for an abuse of discretion, and applications of law are reviewed de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019) (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). We will sustain the trial court's application of the law if it is correct on any applicable theory of law, and the record

7

reasonably supports the ruling. *Id.* (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)). When the trial court's findings are undisputed, we are presented with an issue of law only. *Id.* "The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

**B.     Applicable Law**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. IV; *see also* TEX. CONST. art. I, § 9. Unlawfully obtained evidence shall not be admitted against an individual in a criminal prosecution. TEX. CODE CRIM. PROC. ANN. art. 38.23(a). Entry into a residence by a police officer constitutes a search. *Valtierra*, 310 S.W.3d at 448.

"A search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). One such exception is the emergency aid version of the community caretaking doctrine. *Laney v. State*, 117 S.W.2d 854, 861 (Tex. Crim. App. 2003); *see Mincey v. Arizona*, 437 U.S. 385, 392 (1978). Under the emergency aid doctrine, an officer may make a warrantless entry and search in order to protect or preserve life or avoid serious injury, when they believe that a person within is in need of immediate aid. *Laney*, 117 S.W.2d at 861; *see Mincey*, 437 U.S. at 392. "Moreover, the report of a homicide or the existence of circumstances in which an unnatural death could have occurred can constitute an emergency." *Rauscher v. State*,

8

129 S.W.3d 714, 723 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Corbett v. State*, 493 S.W.2d 940, 946–47 (Tex. Crim. App. 1973)). "Similarly, when the police come upon the scene of a homicide[,] they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Mincey*, 437 U.S. at 392. "We use an objective standard of reasonableness in determining whether a warrantless search is justified under the emergency aid doctrine." *State v. Bland*, 475 S.W.3d 327, 334 (Tex. App.—Corpus Christi–Edinburg 2013, pet. ref'd) (citing *Laney*, 117 S.W.3d at 862). "This objective standard looks at the police officer's conduct and takes into account the facts and circumstances known to the police at the time of the search." *Id.*; *see Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).

**C.    Analysis**

Gonzales argues that the emergency doctrine does not apply because SAPD was engaged in a crime-fighting role when it entered Gonzales's home. *See Bland*, 475 S.W.3d at 334. However, looking at the officers' conduct and the facts and circumstances known to law enforcement at the time of the search, we disagree. *See id.* Gonzales argues that the time that SAPD spent briefing prior to going to Gonzales's home demonstrates that "[t]here was no sense of urgency." However, the trial court found Officer Rule's testimony "to be truthful and credible," which included Officer Rule's assertion that the primary purpose of entering the home "was to conduct a welfare check and to see if anyone had been killed inside the residence." *See Crain*, 315 S.W.3d at 48. The trial court similarly found Officer Portillo's testimony to be truthful and credible; Officer Portillo's testimony aligned with Officer Rule's on the officers' reasonings for entry into the home. *See id.* Both officers also testified that the reason for the briefing was to ensure

9

that the officers "were on the same page."

Gonzales does not argue that SAPD's actions were unreasonable. *See Bland*, 475 S.W.3d at 334 (requiring an objective standard of reasonableness in determining whether entry and search was reasonable under the emergency aid doctrine). At the time the SAPD officers gathered to be briefed on the call, they had received a report of a murder on the premises and a request for assistance for a resident of the home. Given the nature of the call, it was reasonable for the officers to be briefed on the call, obtain further information, and ensure the officers were clear on their plan of action. *See id.*; *Rauscher*, 129 S.W.3d at 722 (concluding officer's entry of home was objectively reasonable where officer took time to speak with neighbors and apartment staff before obtaining entry into defendant's apartment on belief that somebody in home may be deceased).

Based on the report of a possible homicide at the home and a request by a relative of the residence to ensure Gonzales's safety, it was objectively reasonable for the officers to enter the home without a warrant under the emergency aid exception to the Fourth Amendment. *See Bland*, 475 S.W.3d at 334; *Rauscher*, 129 S.W.3d at 722–23. The trial court did not err by denying Gonzales's motion to suppress. *See Ruiz*, 581 S.W.3d at 785. Appellant's sole issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
12th day of August, 2021.