**Jesse RODRIGUEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–06–00517–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 3, 2009.

Douglas M. Durham Houston, TX, for Appellant.

Erin Craig, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Jesse Rodriguez, pled guilty, on May 25, 2006, to possessing more than 4 grams but less than 200 grams of co-caine.[1] The plea agreement imposed nine years' imprisonment on appellant. Appellant accepted the plea the same day that the trial court denied his motion to suppress the cocaine. In his sole issue, appellant argues that cocaine should have been suppressed because the police did not have authority to be in the home where the cocaine was found, and therefore they did not have probable cause to search appellant.

We affirm.

## Background

Appellant was arrested on December 16, 2005 after calling the police and requesting that they collect his children from him. Appellant was married, but he had separated from his wife, Marlene Rodriguez. Marlene and appellant shared custody of their three children, and, on the night of his arrest, appellant was supervising the children at his parents' home while his wife attended a Christmas party. Appellant expected his wife to collect the children around 11:00 p.m., but she called the house and asked appellant's mother if the children could spend the night. Appellant's mother apparently consented. When appellant's wife did not retrieve the children around the appointed time, appellant began calling his wife and sending her text messages, which she ignored. Apparently frustrated that his wife was not coming to collect the children at the agreed time, appellant dialed 911 and asked the police to come retrieve the children from him.

Officer D. Flores responded to appellant's call, which directed him to 1311 Alexander. When Officer Flores arrived, appellant was on the front porch. Although Officer Flores initially found appellant cooperative and informative, he also

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2008).

considered appellant to be emotional and believed that appellant was intoxicated. Officer Flores asked appellant whether he lived at the house. Appellant told him he and his wife were separated and living in different apartments and that his parents owned the house at 1311 Alexander. Officer Flores also testified that appellant began to have frequent mood swings and that the mood swings convinced him to call for assistance. While speaking with appellant on the front porch, Officer Flores called C. Gonzales, appellant's brother-in-law. Gonzales called appellant's wife, Marlene, and explained the situation to her. She left the Christmas party and drove to 1311 Alexander.

At some point before Marlene arrived, appellant "stormed" back into the home. After appellant had stormed back inside, appellant's mother, Juana Rodriguez, appeared on the front porch, Marlene arrived around the same time. Marlene confirmed that the house belonged to appellant's parents. Officer J. Harnett received the officer assist call and likewise arrived at the scene. Officer Flores asked appellant's mother, Juana, whether the police could go in the house, and she said 'yes.'

Upon entering the home, Officer Flores and Officer Hartnett found appellant in the back room with his sleeping children. When Officer Flores and Officer Hartnett entered the children's room and approached appellant, he became defensive and demanded that the officers leave the home. However, Officer Hartnett spoke with appellant for fifteen minutes and convinced appellant to accompany him outside. While appellant and Officer Hartnett were leaving the bedroom, appellant asked to use the restroom. The officers consented, but required appellant to leave the door open. After using the facilities,

appellant walked with the police toward the front door, but, before reaching the front door, appellant changed his mind and told the officers they would have to "come get me."

Appellant went into the kitchen, positioned himself next to a counter on which there was butcher block full of knives, and reached behind him. The officers attempted to restrain appellant to force him to submit. Officer W. Powell, a supervising officer who arrived after Officer Hartnett, aimed his pistol at appellant. Officer Harnett grabbed appellant's arm, but appellant jerked it away. Officer Flores pointed his taser at appellant and attempted to get him in a headlock. Following a struggle, Officer Flores shot appellant with the taser five times. After subduing and arresting appellant for resisting detainment or arrest, the officers took appellant outside and searched him. Upon searching appellant, they found the cocaine that served as the basis for this charge.

Appellant filed a motion to suppress the cocaine, contending that the police officers lacked a warrant to search the home and probable cause to search him. On May 25, 2006, the trial court held a hearing on appellant's motion. The State called appellant's mother, Juana, and Officers Flores, Hartnett, and Powell. The defense called appellant's wife, Marlene, and his brother-in-law, Gonzales. After hearing the evidence and testimony, the trial court denied the motion and made findings on the record that the testimony of the police officers and Gonzalez was credible. Appellant pled guilty on the same day that the trial court denied his motion to suppress the cocaine.

Appellant appeals the trial court's denial of his motion to suppress.[2]

---

2. Appellant appeals the trial court's denial of a motion to suppress, following which appel-

lant entered a guilty plea. Appellant has standing to appeal the admissibility of the

## Standard of Review

We review a denial of a motion to suppress for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim. App.2008) (citing *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006)). When an appellate court reviews a trial court's denial of a motion to suppress evidence it must give "almost total deference to a trial court's express or implied determination of historical facts [while] review[ing] *de novo* the court's application of the law of search and seizure to those facts." *Id.* When the trial court has not made findings, we review the facts in a light most favorable to the trial court's ruling. *Id.*

## Discussion

In one issue, appellant challenges "whether the warrantless seizure of an individual inside his residence over his express refusal of consent, can be justified as reasonable to him on the basis of consent given to police by another." Appellant argues that (1) exigent circumstances may overcome the presumption that a warrantless arrest is illegal, but the exigent circumstances did not exist to justify the officers' entry into the house; (2) although consent is an exception to the warrant requirement, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him regardless of the consent of a fellow occupant"; and (3) as an overnight guest, he had an expectation of privacy in the home that authorized him to refuse consent. *See Georgia v. Randolph,* 547 U.S. 103, 122–23, 126 S.Ct. 1515, 1528–29, 164 L.Ed.2d 208 (2006). We do not reach the exigent circumstances

issue because we conclude that appellant's mother had authority to grant the officers permission to enter the home.

### A. Consent to Enter

■ Consent is among the most well established exceptions to the presumption that a warrantless search is unreasonable. *Johnson v. State,* 226 S.W.3d 439, 443 (Tex.Crim.App.2007); *Brown v. State,* 212 S.W.3d 851, 867–68 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). Texas courts recognize that individuals may give their voluntary consent to have their homes searched and that the police are not required to have a reasonable suspicion of criminal activity before asking to enter a home. *Johnson,* 226 S.W.3d at 443; *State v. Perez,* 85 S.W.3d 817, 819 (Tex.Crim. App.2002). Generally, "whether consent is voluntary turns on questions of fact and is determined from the totality of the circumstances." *Johnson,* 226 S.W.3d at 443.

Unrebutted testimony at the suppression hearing established that appellant's mother gave officers permission to enter the house at 1311 Alexander. Appellant does not challenge his mother's ownership of the house or her standing, as owner and resident, to consent to the officers' entry into the house.[3] Nor is there any evidence to suggest appellant's mother's consent to the officers' entry was anything less than voluntary. Because we give "almost total deference to a trial court's express or implied determination of historical facts," we conclude that the officers had lawful authorization from appellant's mother to enter the house at 1311 Alexander. *See Shepherd,* 273 S.W.3d at 684 (holding that

---

evidence because appellant raised this by written motion before accepting the plea agreement and the trial court ruled on appellant's motion. Tex R.App. P. 25.2(a)(2)(A); *Shankle v. State,* 119 S.W.3d 808, 812 n. 10 (Tex.Crim.App.2003).

**3.** Indeed, appellant's brief states that appellant's mother "met them at the door and consented to the policeman's entry."

appellate courts defer to trial court's determination of historical facts in review of suppression hearing).

### B. Appellant's Expectation of Privacy

 Appellant contends, however, that, even if the police had lawful authority from his mother to enter the home, the police violated his rights under the Fourth Amendment, which provided him with a reasonable expectation of privacy because he qualified as an overnight guest.

 "The Fourth Amendment protects individuals 'against unreasonable searches and seizures.'" *Luna v. State,* 268 S.W.3d 594, 603 (Tex.Crim.App.2008). A defendant seeking to suppress evidence under the Fourth Amendment must show that he had a reasonable expectation of privacy that the government invaded. *Id.* A defendant has a legitimate expectation of privacy in the place searched, and therefore has standing to contest the search, if he has a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Granados v. State,* 85 S.W.3d 217, 223 (Tex.Crim.App.2002). Several factors are relevant to whether a claim of privacy is objectively reasonable: (1) whether the accused had a property or possessory interest in the place searched; (2) whether he was legitimately in the place searched; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the search, he took normal precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy. *Id.*

 The Texas Court of Criminal Appeals has held that "[a]n 'overnight guest' has a legitimate expectation of privacy in his host's home," and thus has standing to complain that he has suffered a Fourth Amendment violation. *Luna,* 268 S.W.3d at 603; *Granados,* 85 S.W.3d at 223 (citing *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1688–89, 109 L.Ed.2d 85 (1990)). However, even if a party has standing under the Fourth Amendment as an overnight guest, his Fourth Amendment claim may fail on its merits. *Luna,* 268 S.W.3d at 603. In particular, "a third party may properly consent to a search when she has control over and authority to use the premises being searched." *Id.* at 604 (holding that trial court did not err in denying motion to suppress evidence obtained as result of warrantless search of apartment to which third party with control and authority had validly consented when third party denied appellant lived with her and explained that he stayed with her only "on and off" and appellant stated that he lived elsewhere).

Here, appellant's status as an overnight guest is questionable. Appellant, his wife, and his mother all stated that appellant lived elsewhere. While the evidence indicated that appellant stayed at the home "at least sometimes," the record does not indicate whether, on the night of his arrest, appellant intended to spend the night at 1311 Alexander. It does, however, indicate that appellant and his wife lived there before they separated, that appellant's wife believed that he stayed at 1311 Alexander on some nights and at a girlfriend's apartment on other nights, and that the police never determined where appellant lived, even after his arrest.

Assuming, therefore, without deciding that these factors are sufficient to establish appellant's standing to complain of the invasion of his right to privacy as an overnight guest, we nevertheless hold that any expectation of privacy appellant had in his mother's house was overridden by his mother's valid consent to the police to

enter. *See Luna,* 268 S.W.3d at 604 (where search of apartment was supported by owner's valid consent, trial court did not err in denying appellant overnight guest's motion to suppress evidence obtained as result of warrantless search).

Appellant relies on *Georgia v. Randolph* to claim that he had the authority to demand that the police leave the property, even after his mother, the owner of the property, consented to their entry and that their failure to do so made the cocaine they recovered from him inadmissible. *Randolph,* 547 U.S. at 108–09, 126 S.Ct. at 1520. *Randolph* addressed the question of whether evidence can be lawfully admitted if the evidence is seized in the face of an objection from a person who is physically present for the search and who shares equal authority with the person who authorized the search. *Id.* at 106, 126 S.Ct. at 1518–19. In appellant's case, the trial court found that appellant did not live at 1311 Alexander, and thus appellant, unlike the defendant in *Randolph,* did not have equal control over the property. *See Luna,* 268 S.W.3d at 604 n. 26 (distinguishing status of defendant in *Randolph* from status of overnight guest, who does not share equal authority over property with property owner). Because appellant lacked authority to prevent the police from entering the house after his mother, who owned the property and lived there, validly consented to their entry, *Randolph* does not apply. *See id.*

We hold that the police did not violate appellant's Fourth Amendment right to privacy by entering the house at 1311 Alexander.

## C. Seizure of the Cocaine

■ Lastly, appellant contends that the police officers violated his Fourth Amendment rights by searching him and seizing the cocaine. After being admitted to the home and discovering appellant in the bedroom with his children, the officers spent approximately fifteen minutes talking with appellant. They convinced him to leave the children's bedroom and to go outside and speak with them. After appellant left the bedroom voluntarily and used the bathroom, he changed his mind, refused to go outside, went into the kitchen, and reached behind him towards a butcher block full of knives. Appellant fought off the officers' attempt to restrain him from reaching the knives, and he resisted being subdued and detained. After subduing and arresting him, the officers conducted a search subsequent to arrest and discovered the cocaine. A search subsequent to arrest is valid. *McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App.2003) (citing *United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973)).

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.