Opinion issued October 7, 2010

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00349-CR

———————————

Quincy Rashard Carter, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th District Court

Galveston County, Texas



Trial Court Case No. 08CR1023

 



 

MEMORANDUM OPINION

          After
the trial court denied his motion to suppress evidence, appellant, Quincy
Rashard Carter, pled guilty to possessing between four and 200 grams of cocaine.[1]  The trial court assessed punishment at three years’
confinement.  In four issues, appellant
contends that the trial court erred in denying his motion to suppress because
(1) he had an objectively reasonable expectation of privacy in his girlfriend’s
hotel room, and thus has standing to challenge the search; (2) the first search
was unreasonable because the arresting officer did not observe a violation of
law; (3) the plain view doctrine did not justify the second search because the
arresting officer was not in a lawful position and appellant did not commit any
criminal activity in plain view; and (4) any consent to search, if given, was
involuntary and thus did not support a warrantless search.  We hold that appellant lacks standing to
challenge the search of his girlfriend’s hotel room and therefore affirm.

Background

          While
on patrol during the evening of April 6, 2008, Texas City Police Department
Officer L. Crouch observed Stephanie Falcon standing next to the passenger-side
window of a car stopped outside of the Bay Motel, apparently soliciting a
ride.  According to Officer Crouch, the
Bay Motel is a “well known area” for prostitutes to “hang out” and solicit
rides, and he had previously encountered Falcon regarding solicitation of a
ride offenses and other city warrants. 
Once Falcon noticed Officer Crouch’s patrol car, she immediately walked
back toward the Bay Motel entrance, and Officer Crouch watched her enter room
fourteen of the motel.  Officer Crouch
followed Falcon to her room, intending to investigate further.  While standing approximately five feet from
the window, Officer Crouch looked through a two-inch gap in the curtains and
observed appellant sitting at a table close to the window, “holding a razor
blade in one hand and a large rock substance in the other hand.”

          Officer
Crouch withdrew from the window and contacted his supervisor, Sergeant W.
Creel, and Officer P. Slaton for assistance. 
Sergeant Creel and Officer Slaton both agreed with Officer Crouch that a
gap in the blinds and curtains existed, and the officers could see movement in
the room behind the blinds.  According to
Officer Slaton, she could walk by the window and “clearly” see appellant
sitting at the table “without having to actually look inside” the room.  The officers then contacted the on-call
district attorney, who informed them that they needed to obtain either consent
to search the motel room from the room’s renter or a search warrant.  The officers obtained the receipt for room
fourteen from the Bay Motel manager.  The
receipt indicated that Falcon alone rented the room.

          After
Sergeant Creel knocked on the door, the officers heard Falcon ask who was
there, and, without identifying themselves as police officers, Sergeant Creel asked
the occupants to open the door.  Falcon
opened the door and Officer Crouch observed appellant leaving the bathroom and
another male, Joey Johnson, standing just behind the door.  Officer Crouch told Falcon that he saw her
commit a violation outside the motel, and the officers asked the occupants to
step outside the room, which they did voluntarily.  Officer Crouch then asked Falcon if she
rented the room alone or with another person, and she confirmed that she rented
the room solely in her name.

Officer Crouch mentioned to Falcon
that, as he came to her room to investigate her earlier violation, he observed
appellant holding a razor blade and a “rocky substance.”  He asked whether Falcon would give her
consent to search the room for “any illegal narcotics or narcotic
paraphernalia.”  Falcon agreed, and all
three officers witnessed her signing the “consent to search” form.  Sergeant Creel informed Falcon that if she or
one of her guests had any narcotics or paraphernalia in the room, she should
tell him before the officers searched and found it themselves.  Falcon told him that, as far as she knew,
there was nothing illegal in her room.  Officer
Crouch testified that he did not hear appellant say anything about the search,
none of the officers asked him for consent to search, and appellant never
mentioned that he did not want the officers to search the room.  Officer Slaton did not recall hearing
appellant either say anything about the search or tell the officers to leave, although
she did hear appellant or Johnson state that he had just arrived at the room
and did not know what was going on.

          After
the officers obtained Falcon’s consent, officers from the Special Crimes Unit
searched the motel room.  The officers
found female clothing and personal articles in the dresser, but no male
clothing or personal items anywhere in the room.  On the table at which Officer Crouch
initially saw appellant sitting, the officers discovered small particles of a
“white rocky substance” that later field-tested positive for crack cocaine.  The officers also found a small baggie of
marijuana and numerous small, empty baggies in the trash can behind appellant’s
chair.  The search also uncovered a large
bag of crack cocaine hidden in the toilet tank. 
The officers then arrested appellant, Falcon, and Johnson, and the State
charged appellant with possession of a controlled substance with intent to
deliver.

          The
next morning, Detective R. Johnston interviewed appellant.  Appellant told Detective Johnston that
Falcon, his girlfriend, rented the room. 
When Detective Johnston asked appellant who consented to the search,
appellant answered that both he and Falcon consented, although only Falcon
signed the official consent form.  Appellant
further stated that, while in the room, he held a rock of crack-cocaine and cut
pieces off of it.  Detective Johnston
gave appellant the opportunity to review his statement and make changes; appellant
initialed each question and answer and signed each page of the statement.

          Appellant
testified on his own behalf at the suppression hearing.  When asked by defense counsel whether he was
staying with a woman at the Bay Motel on April 6, appellant stated that he was
not staying there, but rather he and Johnson were just visiting.  According to appellant, he and Johnson had
“just arrived [at the room]” before the search, and they had not been to the
room before.  Appellant testified that he
did not know that cocaine was present in the room, he did not shave a rock of
cocaine with a razor while in the room, and the blinds and curtains did not
have an opening large enough to see through. 
Appellant believed that the police ordered Johnson, Falcon, and himself
out of the room, and he did not think that he had a choice whether to
obey.  Appellant also testified that he mentioned
his objections to the search to both Officer Crouch and Sergeant Creel, and
when he told them that Falcon rented the room, the officers ignored his
objections and asked her for consent to search.

          On
cross-examination, appellant testified that he did not see Falcon give her
consent to search.  When asked about the
discrepancies between his statement made to Detective Johnston and his
testimony at the suppression hearing, he replied that his post-arrest statement
was incorrect.  According to appellant,
Johnston told him to “hurry up and sign [his] initials by it because the
Galveston County chain was coming to carry [him] to Galveston County,” and thus
he did not have the opportunity to read over the statement before initialing
and signing.  Appellant believed that
Johnston “made up” almost everything contained in the statement and “conspired”
with the other officers to “put this case on [appellant] or make [him] look
like [he] was a drug dealer.”

          The
trial court denied appellant’s motion to suppress evidence and made the
following findings of fact:

(1) Officer Crouch observed a
violation of law near the [Bay Motel]. 
As he proceeded closer to Apartment 14 to investigate, he observed a
separate law violation:  a person within
Apartment 14 appeared to be possessing cocaine.

 

(2) Officer Crouch determined
that Stephanie Falcon had rented the apartment and obtained a signed consent
form from her to search the apartment. 
There was no testimony that any other person had rented Apartment
14.  The Defendant testified he was a
mere visitor on the premises.

 

The trial court also made the following conclusions
of law:

(1) The Defendant has no
standing to challenge the search of the premises where the alleged contraband
was found because he was not the person who rented the premises.

 

(2) A signed consent form was
obtained by the Texas City Police Department from the person who rented the
apartment and that gave officers the legal right to conduct a search of the
premises.

 

After the trial court denied his motion to suppress,
appellant, who had been indicted for possession of a controlled substance with
intent to deliver, pled guilty to the reduced charge of possession of a
controlled substance.  The trial court
assessed punishment at three years’ confinement.

 

 

Standard of Review

          We
review a denial of a motion to suppress for an abuse of discretion.  Shepherd
v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing State v. Dixon, 206 S.W.3d 587, 590
(Tex. Crim. App. 2006)).  When we review
a trial court’s denial of a motion to suppress, we give “almost total deference
to a trial court’s express or implied determination of historical facts [while]
review[ing] de novo the court’s
application of the law of search and seizure to those facts.”  Id.;
see also Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997) (holding that we defer to trial court’s
application of law to fact questions if questions turn on evaluation of
credibility and demeanor).  We view the
evidence in the light most favorable to the trial court’s ruling.  Wiede
v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006)).  The trial court
is the “sole trier of fact and judge of credibility of the witnesses and the
weight to be given to their testimony.”  St. George v. State, 237 S.W.3d 720, 725
(Tex. Crim. App. 2007).  The trial court
may choose to believe or disbelieve any part or all of a witness’s
testimony.  Green v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).  We sustain the trial court’s ruling if it is
reasonably supported by the record and correct on any theory of law applicable
to the case.  Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

 

Discussion

          Appellant
contends that the trial court erred in denying his motion to suppress evidence because
(1) Officer Crouch did not have reasonable suspicion to believe that Falcon
committed a violation of law, and therefore his first search at the room’s
window was unreasonable; (2) the plain view doctrine does not justify the
search of the motel room because Crouch was not lawfully in position when he
allegedly saw appellant with crack cocaine and appellant did not commit any
criminal activity in plain view; and (3) Falcon’s consent to search, if given,
was involuntary and thus does not support a warrantless search of the room.

          We
must first determine whether appellant has standing to challenge the validity
of the search.  A defendant seeking to
suppress evidence under the Fourth Amendment must show that he had a legitimate
expectation of privacy in the place that the government invaded.  Luna v.
State, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008); Granados v. State, 85 S.W.3d 217, 222–23 (Tex. Crim. App. 2002)
(citing Rakas v. Illinois, 439 U.S.
128, 143, 99 S. Ct. 421, 430 (1978)). 
The defendant bears the burden of demonstrating standing to challenge
the legality of the search.  See Granados, 85 S.W.3d at 223; Weaver v. State, 265 S.W.3d 523, 532
(Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).  The defendant must show that he had a
subjective expectation of privacy in the place invaded that society is prepared
to recognize as reasonable.  Granados, 85 S.W.3d at 223.

In considering whether an appellant
has demonstrated an objectively reasonable expectation of privacy, we examine
the totality of the circumstances, including whether:  (1) the defendant had a property or
possessory interest in the place invaded; (2) he was legitimately in the place
invaded; (3) he had complete dominion or control and the right to exclude
others; (4) prior to the intrusion, he took normal precautions customarily
taken by those seeking privacy; (5) he put the place to some private use; (6)
his claim of privacy is consistent with historical notions of privacy.  Id.;
Rodriguez v. State, 313 S.W.3d 403,
407 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  This list of factors is not exhaustive, nor
is any one factor dispositive of an assertion of privacy.  Granados,
85 S.W.3d at 223.

          The
Court of Criminal Appeals has held that “an ‘overnight guest’ has a legitimate
expectation of privacy in his host’s home.” 
Luna, 268 S.W.3d at 603
(citing Minnesota v. Olson, 495 U.S.
91, 98, 110 S. Ct. 1684, 1689 (1990)). 
We have also previously held that “an overnight guest of a registered
hotel guest shares the registered guest’s reasonable expectation of privacy in
the room.”  Wilson v. State, 98 S.W.3d 265, 269 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d) (citing Stoner v.
California, 376 U.S. 483, 490, 84 S. Ct. 889, 893 (1964) and Olson, 495 U.S. at 99–100, 110 S. Ct. at
1689–90).  Although the Court of Criminal
Appeals has previously held that a more casual visitor, rather than an
overnight guest, does not have a reasonable expectation of privacy in another’s
home, it failed to adopt a rule that a non-overnight guest can never have
standing to challenge a search of his host’s home.  See
Villarreal v. State, 935 S.W.2d 134, 137 n.4 (Tex. Crim. App. 1996)
(plurality op.).

In Villarreal, the defendant spent an hour or two at an associate’s house
to arrange a business transaction, returned approximately two hours later, and
“rush[ed] into the residence to avoid arrest” after the police officers monitoring
the house identified themselves and warned Villarreal and two others to stop
unloading packages from their vehicle.  Id. at 136, 139.  In the ensuing search of the house, officers
discovered marijuana, firearms, a large quantity of cash, cocaine, and drug
paraphernalia.  Id. at 136.  In holding that
Villarreal’s subjective expectation of privacy was not one that society was
prepared to recognize as objectively reasonable, the plurality relied on
Villarreal’s failure to present evidence that: 
(1) he had a property or possessory interest in, or unrestricted
access to, the house; (2) he had dominion or control over the residence or the
right to exclude others; and (3) he intended to stay overnight at the
house.  Id. at 139.  Under these
circumstances, this “casual visitor” did not have standing to challenge the
search of the house.  Id. at 137, 139.

          Appellant
contends that his expectation of privacy in Falcon’s hotel room was objectively
reasonable because he was legitimately in the room, he believed that he had to
power to exclude others from the room as demonstrated by his attempt to refuse
entrance to the police, he tried to ensure his privacy by closing the curtains
and blinds, the room was not open to the public, and the “expectation of
privacy of a boyfriend and girlfriend behind closed doors” is consistent with historical
notions of privacy.

          The
evidence presented at the suppression hearing, however, does not support
appellant’s contention that he has standing to challenge the search.  Appellant testified that he was not staying
with Falcon, but was only a visitor who had “just arrived” at the hotel room
with Johnson before the search. 
Appellant stated that the curtains and blinds were closed, but Sergeant
Creel and Officers Crouch and Slaton all testified that they could see into the
room through a gap in the curtains. 
According to Officer Slaton, the gap in the curtains was wide enough
that one could walk by the window and clearly see in “without having to
actually look inside.”  Although
appellant may have believed that he had the power to exclude others from the
room, he also acknowledged that Falcon rented the room solely in her name and
because he was “just a visitor,” he had “no authority over giving a consent to
search . . . that room.” 
Thus, because Falcon alone rented the room, appellant lacked “complete
dominion or control” over the room.  See Granados, 85 S.W.3d at 223.

          Appellant
also testified that he made his objections to the search known to both Officer Crouch
and Sergeant Creel, and, instead of heeding his wish, they asked Falcon for her
consent.  This testimony not only
contradicts the testimony of Officer Crouch, who stated that none of the
officers ever asked appellant for consent to search and that appellant never
gave any indication that he did not want the officers to search the room, but it
also contradicts appellant’s post-arrest statement, in which he informed
Detective Johnston that both he and Falcon agreed to the search.  Appellant argued that this statement was
patently false and entirely made up by Johnston as part of a “conspiracy” to
make it appear as though appellant was a drug dealer.  However, at a suppression hearing, the trial
court is the sole judge of the weight and credibility of the evidence and may
choose to believe or disbelieve all or part of a witness’s testimony.  See St.
George, 237 S.W.3d at 725; Green,
934 S.W.2d at 98; see also Weaver,
265 S.W.3d at 534 (“However, the trial court, as judge of demeanor and
credibility, could have chosen to not believe appellant’s unsubstantiated
testimony.”).  The trial court reasonably
could have chosen to believe the testimony of Sergeant Creel and Officers
Crouch and Slaton, and chosen not to believe appellant’s self-serving and
unsubstantiated testimony.

          Appellant
also presented no evidence that he intended to stay overnight with Falcon in
the room or that he contemplated anything other than a brief visit to her motel
room with another friend.  See Gouldsby v. State, 202 S.W.3d 329,
335 (Tex. App.—Texarkana 2006, pet. ref’d) (holding that reliance on Olson’s overnight guest doctrine is
“misplaced” when defendant presents no evidence that he was overnight guest on
night of search, although he had stayed overnight on previous occasions).  Appellant testified that he had never been to
the room before, and the officers conducting the search of the room found only female
clothing and personal articles.  See Hollis v. State, 219 S.W.3d 446, 458
(Tex. App.—Austin 2007, no pet.) (considering, among other factors, defendant’s
failure to keep personal belongings at another’s property when making
determination that defendant did not share owner’s reasonable expectation of
privacy); Smith v. State, 176 S.W.3d
907, 914 (Tex. App.—Dallas 2005, pet. ref’d) (holding same).

Appellant did not testify regarding
his purpose for visiting Falcon’s room or regarding what he did while in the
room.  The only testimony concerning
appellant’s activities inside the room came from Officer Crouch, who stated
that he saw appellant shaving a rock, which later tested positive for crack cocaine,
with a razor blade.  Although appellant
contends that “the expectation of privacy of a boyfriend and girlfriend behind
closed doors together is consistent with historical notions of privacy,”
appellant visited his girlfriend’s room with a third party, Johnson, and
appellant cites no authority that the boyfriend-girlfriend relationship alone
is sufficient to extend Falcon’s reasonable expectation of privacy to
appellant, when the evidence presented suggests that appellant intended only a
brief visit to the room for an unspecified purpose.  See
Davidson v. State, 249 S.W.3d 709, 726 (Tex. App.—Austin 2008, pet. ref’d)
(“As in Villarreal, appellant
presented no evidence that she was anything other than a guest with
indeterminate access to the property.”).

          Based
on the evidence presented, we conclude that appellant did not meet his burden
to demonstrate that he had an objectively reasonable expectation of privacy in
Falcon’s motel room.  Accordingly,
appellant lacks standing to challenge the legality of the officers’ search of
the motel room.  We hold that the trial
court did not abuse its discretion in denying appellant’s motion to suppress
evidence.[2]

Conclusion

We hold that appellant lacks standing
to contest the legality of the search of the motel room, and therefore affirm
the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes                                                                                                  Justice 

 

Panel
consists of Justices Keyes, Higley, and Bland.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]
          Tex. Health &
Safety Code Ann. §§ 481.102(3)(D),
481.115(d) (Vernon 2010).





[2]
          Because we hold that appellant lacks standing
to contest the search, we do not address appellant’s remaining contentions on
appeal.