Opinion issued October 27, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00970-CR

———————————

HERBERT Banny Gibbs, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 183rd District
Court 

Harris County, Texas



Trial Court Case No. 1166203

 



MEMORANDUM
OPINION

          Appellant Herbert Banny Gibbs plead guilty to
possession of a controlled substance with intent to deliver[1]
and the trial court sentenced him to sixteen years in prison.  In two points of appeal, Gibbs argues that his
consent to search was coerced and that he was without authority to give
consent.  

          We
affirm.

Factual
Background

          Houston
police officers began surveillance of appellant pursuant to a tip that he was
involved in drug trafficking.  Officer Kowal testified that he saw appellant leave his apartment
carrying a garbage bag, drive to a storage facility, punch in a code on a key
pad, enter, and thereafter exit the facility with an object that he then placed
on the bed of his truck.  Officer
Robertson testified that appellant then drove to a Walgreen’s parking lot,
where a dark-colored Tahoe was parked, took something from the bed of his
truck, and exchanged it with the Tahoe driver for an unidentifiable wad, which he
officer believed to be cash.  Both
appellant’s vehicle and the Tahoe drove out of the parking lot immediately
thereafter.

          After
appellant left the scene, the driver of the Tahoe was arrested and found to be
in possession of 1,500 tablets of hydrocodone.  Officer Kowal
testified that the bag with the pills appeared to be the same bag he had seen
appellant carrying when he left the storage facility. 

Officer Gamble followed appellant
to a store where appellant met his wife, Betty Brown.  Gamble detained appellant, put him in the
back of the patrol car, explained the situation to Brown, and read appellant
his Miranda warnings.  Officer Gamble testified that appellant said
he understood the legal warnings that were given to him.    

Officer Gamble testified that Brown
told him that the storage unit was in her name and she paid the bill, but that
appellant used the unit and she had nothing to do with it.  She asked if she was going to go to jail if
anything was found in the unit.  Gamble
assured her that she would not go to jail for anything found in the unit and
sought her consent to search the unit. 
Gamble further testified that she did not consent but did state that she
did not want to go to jail and offered to take Gamble to the storage unit,
traveling there in her own car. 

Brown, on the other hand, testified
that, when she asked the police officers what was going on, they said “y’all
been selling pills,” and that she felt that statement included her.  She testified that Officer Gamble told her
that if she did not take him to the storage facility, he would take her to
jail.  Despite the fact that she was not
in custody or handcuffs, Brown testified that she felt obligated to do what
Officer Gamble told her to do and did not feel free to leave.  She did not volunteer.  

When they arrived at the storage
unit in their separate cars, police were already there, as was appellant.  Officer Kowal
testified that he identified himself to appellant and described the details of
the investigation to him, including the fact that he was suspected of being a
drug dealer who had more drugs in the storage unit. Officer Kowal
testified that appellant seemed to understand the police officer’s purpose and
when asked if he understood the legal warnings that had been given to him, appellant
said that he did.  Officer Kowal testified that Officer Goines
asked appellant for a written consent to search the storage unit, explained the
details of the consent to appellant, and told him it was voluntary.  Officer Kowal
testified that appellant read the consent, expressed no concerns about signing,
and signed it.  Appellant then gave the
officers the gate code and the key to the storage unit and directed them to
unit 519. 

Appellant, however, testified that
when he arrived at the storage unit he was surrounded by six or seven officers
and felt he had no power to refuse consent to search.  He testified that no one told him he did not
have to consent to the search, but that instead they told him if he did not
comply they would get a search warrant.  

Appellant testified that he thought
that because his name was not on the lease, he was protected and had the law on
his side.  Accordingly, when presented
with a consent form, he testified that he signed it after writing the words “I
do not understand why you asking me to sign this” at the top of the form.  According to appellant, Officer Goines crumpled up that consent and threw it away.  Appellant further testified that he was told
that Brown would go to jail if he did not sign the consent form.  Appellant testified that he needed Brown to
stay out of jail so that she could pay for his lawyer.  When Officer Goines
handed him another consent form, appellant testified that he had already made
up his mind that he was protected because, as the storage unit was in Brown’s
name and not his, he believed that signing the consent meant nothing.  He also believed that Brown would go to jail
if he did not sign, and the “final piece” that caused him to sign the consent
was to make sure Brown did not go to jail so she would be able to get to the
money to pay his lawyer.  Appellant
signed the consent.  Appellant also
testified that, while Brown would not tell a lie, he personally would lie about
anything.  After
appellant signed the consent, gave the officers the gate code and key to the
storage unit, and identified the unit in question, the officers entered the
storage unit and found approximately sixty pounds of prescription drugs, the
majority of which was hydrocodone.  

Procedural Background

          Appellant was charged with the felony offense of possession
of a controlled substance with intent to deliver at least 400 grams of dihydrocodeinone.  See
Tex. Health & Safety Code Ann. §§ 481.102(3), 481.112(a),
(f) (West
2010). 
The indictment included two
enhancement paragraphs alleging prior felony convictions.  Appellant filed a motion to supress challenging the admissibility of the evidence,
specifically the hydrocodone, which he alleges was
obtained in violation of his rights under the Fourth, Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution, as well as Article I,
Section 9 of the Texas Constitution.  

          After an evidentiary hearing, the trial court denied
appellant’s motion to suppress and entered findings of facts and conclusions of
law concerning: (1) the voluntariness of the consent to search; (2) the details
of the surveillance, arrest, and the signing of the consent;  and (3) what the officers found in the storage
unit.  The court also entered conclusions
of law as follows:  (1) appellant was
lawfully arrested; (2) he was given his statutory warnings; (3) he understood
his warnings; (4) he “intelligently, freely and voluntarily” agreed to the
consent to search; (5) he “intelligently, freely and voluntarily” signed a
written consent to search; and (6) no force, promises, threats, or intimidation
were used by police authorities either before or during the appellant’s giving
his consent to search.

Appellant
entered a plea of guilty.  The State
agreed to abandon the two enhancement paragraphs, and the trial court granted
appellant permission to appeal its ruling on the motion to supress.  The trial court assessed punishment at sixteen
years’ confinement and this appeal followed.

Analysis

          Appellant argues that his consent to search was coerced and he was
without authority to consent to the search of the storage unit.  By challenging the voluntariness of consent
and the authority to consent, appellant challenges the trial court’s denial of
appellant’s motion to suppress evidence. 


A.  
Standard of Review

We review a trial court’s decision
in denying a motion to suppress for an abuse of discretion under a bifurcated
standard of review giving almost total deference to the trial court’s
determination of historical facts that depend on credibility.  See Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000).  This is especially true when
the trial court’s findings turn on evaluating a witness’s credibility and
demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex.
Crim. App. 2000).  We give the
same amount of deference to the trial court’s ruling on mixed questions of law
and fact when the question is resolved by evaluating credibility and
demeanor.  Id.  at
856.  Only pure questions of law are
considered de novo.  Id.  

When, as here, a trial court makes
explicit findings of fact, we determine whether the evidence, viewed in the
light most favorable to the trial court’s ruling, supports the findings.  See State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006). 
If the trial court’s ruling is reasonably supported by the record and is
correct on any theory of law applicable to the case, the reviewing court will
sustain it upon review.  Villareal v. State, 935 S.W.2d
134, 138 (Tex. Crim. App. 1996).  

 

B.  
The Voluntariness of Appellant’s Consent

In his
first issue, appellant asks us to decide if his consent to search was coerced
and therefore not freely and voluntarily given.

1.    
The Law

Consent is among the most
well-established exceptions to the presumption that a warrantless search is unreasonable.  Johnson v. State, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007); Rodriguez v. State, 313 S.W.3d 403, 406
(Tex. App.—Houston [1st Dist.] 2009, no pet.).  For such a consent
to be valid, however, it must be voluntary. 
Reasor v. State, 12 S.W.3d 813,
817 (Tex. Crim. App. 2000).  A
search made after voluntary consent is not unreasonable.  See id.
at 818.  Whether consent was voluntary involves a
question of fact that is determined from the totality of the
circumstances.  Gutierrez v. State, 221 S.W.3d 680,
686−87 (Tex. Crim. App. 2007); Cadoree v. State,
331 S.W.3d 514, 520 (Tex. App.—Houston [14th Dist.] 2011, no pet.). 

In the
context of a motion to suppress, the State must prove voluntary consent by
clear and convincing evidence.  See Carmouche,
10 S.W.3d at 331. 
In order to be voluntary, consent must “not be coerced, by explicit or
implicit means, by implied threat or covert force.”  Id.
(quoting Schneckloth v. Bustamonte,
412 U.S. 218, 228, 93 S. Ct. 2041, 2048 (1973)).  Consent must be shown to be positive and
unequivocal.  Allridge v. State, 850 S.W.2d
471, 493 (Tex. Crim. App. 1991). 
We consider the following factors in determining voluntariness:  appellant’s age, education, and intelligence;
the length of detention; any constitutional advice given to the defendant; the
repetitiveness of the questioning; and the use of physical punishment.  See Reasor, 12 S.W.3d at 818.  We
also consider whether appellant was in custody, handcuffed, or had been
arrested at gunpoint; whether Miranda
warnings were given; and whether appellant had the option to refuse to
consent.  See Flores v. State, 172 S.W.3d 742, 749–50 (Tex. App.—Houston
[14th Dist.] 2005, no pet.).  In
examining the totality of the circumstances surrounding consent to search, the
trial court should consider the circumstances before the search, reaction of
the accused to pressure, and any other factor deemed relevant.  Reasor, 12 S.W.3d at 818.

2. Trial 

The trial
court made findings of fact and conclusions of law to the effect that: (1) appellant
consented to search the storage unit in question intelligently, freely, and
voluntarily; (2) he intelligently, freely, and voluntarily signed a written
consent to search; and (3) no force, promises, threats, or intimidation were
used by police authorities either before or during appellant’s giving his
consent to search the storage unit. 
Accordingly, we must determine whether the evidence, viewed in the light
most favorable to the trial court’s ruling, supports the findings.  See
Kelly, 204 S.W.3d at 818.

a.    
The State’s Evidence

          The State called four police officers to the stand to
testify concerning the surveillance operation, appellant’s arrest, and the
search of the storage unit.  Each
testified that appellant signed the consent of his own free will and without
coercion.  

Officer Kowal testified as follows: (1) he asked Officer Gamble if appellant
had been given his legal warning and was told that he had; (2) Officer Kowal asked appellant if he understood his legal warnings
and appellant said he did; (3) appellant appeared coherent and not mentally
deficient; (4) Officer Kowal heard Officer Goines explain to appellant that they would like his
consent to look in the storage unit and further explain the details of the
consent; (5) appellant did not express concern to him about signing the
consent; (6) appellant did not ask questions about the consent; and (7) Officer
Kowal never saw appellant threatened or heard a
threat made towards Brown.

Officer
Richardson also testified as to the voluntary nature of the consent.  She testified that: (1) no one threatened
appellant, but that Officer Goines gave him the
consent form and he signed; (2) she heard Officer Goines
talk to him about the consent and read appellant’s warnings to him; (3) she got
the impression that appellant understood the consent form and voluntarily gave
his consent; and (4) the police did nothing to make appellant worry about Brown
being arrested.

Officer Gamble testified that he arrested appellant and read
him his Miranda  warnings.  He further testified that appellant indicated
that he understood those warnings.  He
denied that he ever threatened Brown in any way or did anything to make
appellant believe that he was going to arrest Brown if consent was not given.  Officer Goines
testified that: (1) back at the storage unit, appellant’s warnings were read
again; (2) he read the consent to appellant, explained it, and asked if he had
questions, as was his regular practice; (3) appellant asked no questions about
the consent, but only wanted to make sure Brown would not be charged; and (4)
he never told appellant that his wife would be arrested and he never threatened
her. 

b.    Appellant’s Evidence                  

Brown
testified that Officer Gamble told her that if she did not take him to the
storage unit, he would take her to jail and thus she felt obligated to do
so.  She further testified that she
called her lawyer and passed the phone to Officer Gamble,
and that after the phone call Officer Gamble said, “All bets are off.  Everything I find in the storage belongs to
you.”  She further testified that Officer
Goines told her that if she signed a release to have
her home searched, he would not take her to jail. 

Appellant
also testified that, while he was in custody and surrounded by officers, the
police asked permission to search the storage unit.  He further testified that, as his name was
not on the lease, he thought he could use that fact as an excuse not to let
them in.  According to appellant, Officer
Goines told him that Brown was on her way over there
to let the police in and both he and Brown were going to jail.  Because appellant needed Brown free to be
able to secure the money to pay his lawyer, he signed the consent form.  

c.     
Issues Raised Concerning Voluntariness of Consent

In light
of the fact that he was under arrest at the time of the consent, surrounded by
officers, and believed his wife was going to be arrested, appellant’s testimony
raises questions about the voluntariness of his consent.  

While
being in custody and in the presence of uniformed police officers are factors
to be considered in determining the voluntariness of consent, these are not
determinative and can be overcome by demonstrating the lack of coercion in
acquiring consent.  See Reasor, 12 S.W.3d
at 817–18.  In Reasor, the defendant was
arrested at gunpoint and was handcuffed when he gave the State consent to
search.  Id. at 818.  Moreover, the police’s entry into his home
was illegal and the consent was given after they had taken the defendant inside
his home.  Id.  The Court of Criminal
Appeals, however, found that, despite these facts, several factors supported
the State’s contention that it proved by clear and convincing evidence that the
defendant voluntarily consented to the search of the house.  Id. at 819.  These
factors included the defendant having been given his Miranda warnings twice and signing a consent to search form.  The court found, accordingly, that “the
record demonstrate[d] that appellant understood his legal rights and chose not
to assert them at that time.”  Id.  In consideration of all the circumstances “and
giving proper deference to the trial court’s determination,” the Court of
Criminal Appeals held that the State proved by clear and convincing evidence
that appellant had consented to the police search of his home.  Id. at 818.

Similarly,
although appellant signed the consent form while in handcuffs, the evidence
demonstrates that he was cooperative and assisted the officers in their
investigation.  He gave them the gate
code and the key to the storage unit, as well as instructing the officers which
unit to search.  Moreover, he had his Miranda warnings read to him more than
once, and appeared to be coherent and to understand and appreciate the
warnings.  Officer Goines
testified that he read and explained the consent form to appellant and that the
form itself stated that appellant had the right to refuse consent. 

Moreover,
there is no evidence of any physical coercion or punishment
of appellant, nor evidence of lengthy detention or unduly repetitive
questioning of appellant, who had two years of college education and had
previously owned his own business. 
Beyond his formal education, appellant had a lengthy involvement with
narcotics and was well aware of the implications of consent forms.  See id.
(listing age, education, intelligence, length of detention, repetitiveness of
questioning, and use of physical punishment as factors in determining
voluntariness).  None of these factors
indicate that appellant’s consent to search was involuntary or coerced.

We
conclude that the fact that appellant was in custody and in the presence of
uniformed police officers at the time he signed the consent form does not
overcome the “almost complete” deference we are to show to the trial court’s
conclusion that the consent was voluntary.  See Schneckloth,
412 U.S. at 248–49, 93 S. Ct. at 2059.  

Nor does
appellant’s fear of his wife’s potential arrest require us to find that
appellant’s consent was involuntary. 
Were the evidence to establish that the police officers told appellant
his wife would be arrested if he refused to sign the consent form, the
voluntariness of the consent would surely be in question.  See Flores, 172 S.W.3d at 752 (“Such antagonistic action by the
police against a suspect’s family is a factor which significantly undermines
the voluntariness of any subsequent consent given by the suspect.”).  The evidence, however, does not so
establish.  

While
appellant and Brown both testified that the officers had threatened Brown with
arrest, that testimony is contradicted by the testimony of all four officers
involved, each of whom testified that no such threat had been made.  Thus the trial court’s findings in this
matter turned entirely upon its evaluation of the witnesses’ “credibility and
demeanor.”  See Ross, 32 S.W.3d at 856.  The trial judge presiding at a
suppression hearing is the sole trier of fact and
judge of the credibility of the witnesses.  Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim.
App. 2007).  In light of the deference to be given the
trial court’s findings and the facts herein, we conclude that the State met its
burden to prove the voluntariness of appellant’s consent.

d.   
Conclusion

We overrule
appellant’s first issue.  

C.  
Appellant’s Authority to Consent

          In his second issue, appellant asks us to decide if he had
authority to give consent to the search of the storage unit.

1.    
The Law

The
“co-occupant consent rule,” another exception to the Fourth Amendment rule
prohibiting searches without warrants, recognizes the validity of searches with
the voluntary consent of a person possessing authority.  Georgia v. Randolph, 547 U.S. 103, 109, 126 S. Ct. 1515, 1520
(2006).  That person may be the
person against whom evidence is sought, or a fellow occupant who shares common
authority over the property, when the suspect is absent.  Id.  A third party may properly consent to a
search when he has control over and authority to use the premises being
searched.  Balentine, 71 S.W.3d at 772 (citing United
States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988 (1974)).  This exception for consent extends even to
entries and searches with the permission of a co-owner whom the police reasonably,
but inaccurately, believe to possess shared authority as an occupant.  Id.  

It is not
a party’s legal property interest that determines authority to consent, but
instead, consent derives from the mutual use of the property.  Welch
v. State, 93 S.W.3d 50, 53 (Tex. Crim. App.
2002).  The relevant inquiry is not which
party has a superior interest in the property, but whether the party giving
consent has joint access to and control of the property for most purposes at
the time consent is given.  Id. 
Third-party consent is valid if the third party has mutual access and
control over the property searched and if it can be said that appellant
“assumed the risk” that the third party would consent to a search.  Id.  

The
consent of one who possesses common authority over premises or effects is valid
as against an absent, non-consenting person with whom that authority is
shared.  Matlock, 415 U.S. at 170, 94 S. Ct. at
993.  If, however, the objecting
party is present, his objection is “dispositive as to him, regardless of the
consent of a fellow occupant.”  Randolph, 547 U.S. at 122−23, 126 S. Ct. at 1528.  The State has the burden of establishing
common authority.  Illinois v. Rodriguez, 497 U.S. 177,
181, 110 S. Ct. 2793, 2797 (1990).     


2.    
Application of Law to the Facts

          Here, Officer Gamble’s testimony regarding his conversation
with Brown about the storage unit established that Brown had nothing to do with
the storage unit— other than that the lease was in her name and she paid the
bill—that appellant alone used the storage. 
Brown herself testified that only appellant used the storage unit and
that she had nothing to do with it apart from paying the bill.  Brown testified that she had a key to the
storage unit but never kept anything in there. 
Appellant possessed the gate code and the keys to the unit and he alone
used the storage unit.  We conclude that
appellant had control and authority over the premises being searched and
therefore he could properly consent to a search.  See
Matlock, 415 U.S. at 171, 94 S. Ct. at 993.

          Appellant argues, however, that Brown had superior
authority to consent to search. 
According to appellant, while Matlock  holds that
the consent of one who possesses common authority over premises or effects is
valid against the absent, non-consenting person with whom the authority is
shared, Matlock does not apply when a
person with a superior privacy interest is present.  See
United States v. Impink, 728 F.2d
1228, 1234 (9th Cir. 1984).  

          Appellant’s claim that Brown had the superior privacy
interest is, however, without support in the record or the law.  The record reveals that Brown’s only
connection with the storage unit was that her name was on the lease and that
she paid the bills, while appellant was the only party who actually used the
unit.  As we have noted above, it is not
a party’s legal property interest that determines authority to consent, but
rather, consent derives from the mutual use of the property.  Welch,
93 S.W.3d at 53. 
We conclude that Brown did not have a superior privacy interest to
appellant in the storage unit.

          Furthermore, the facts in this case are distinguishable
from Impink.  Impink  involved a situation in which a
landlord granted consent to search premises when the tenant was present and
objected.  Impink, 728
F.2d at 1234.  The Ninth Circuit
held that “where a suspect is present and objecting to a search, implied
consent by a third party with an inferior privacy interest is
ineffective.”  Id. at 1234.  

Here,
while Brown was indeed present when the search took place, the record does not
reveal that she objected.  Officer Gamble
testified that when he asked her if she would consent to the search, Brown did
not refuse consent but only reiterated that she did not want to go to
jail.  When he assured her that she was
not going to jail, Officer Gamble testified that Brown volunteered to take him
to the storage unit.  

          Brown testified that she was threatened with jail if she
did not take Officer Gamble to the storage unit.  Brown did not testify, however, that she was
asked for and refused to give consent to enter the storage unit.  Accordingly, Impink is distinguishable.          

          Finally, the Texas Court of Criminal Appeals has declined
to follow the holding in Impink.  See
Welch, 93 S.W.3d at 55.  Instead, the court in Welch held that the relevant inquiry is
not whether the defendant held a superior privacy interest to the third party
granting consent, but: (1) whether that third party “ha[d] mutual access to and
control over the property for most purposes” at the time he granted consent;
and (2) whether the defendant had “assumed the risk” in giving such joint
access and control that the third party would consent to a search.  Id. at 55, 57.

          We conclude that the answer to these questions in this
case, as in Welch, is “yes.”  Appellant had joint access and control over
the storage unit when he signed the consent form.  Brown assumed the risk that appellant would
consent to a search when she gave up the storage unit to his use.  Moreover, as in Welch, although Brown was present at the search and withheld
consent, she did not explicitly refuse consent. 
We hold that appellant had authority to give consent for the warrantless
search of the storage unit.

          We overrule appellant’s second issue.

Conclusion

We affirm
the judgment of the trial court.

 

 

                                                Jim Sharp

Justice

 

Panel consists of Justices
Keyes, Sharp, and Massengale.

Justice Keyes, concurring without
opinion.

Do
not publish.   Tex. R.
App. P. 47.2(b).











[1]
          The substance was more than 400
grams of dihydrocodeinone.  See Tex. Health & Safety Code Ann. §§
481.102(3), 481.112(a), (f) (West 2010).