

# NUMBER 13-11-00137-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAMES EDWARD PEARSON,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 357th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant James Edward Pearson challenges his conviction by a jury on two counts of intoxication manslaughter, a second-degree felony that was enhanced to a first-degree felony as a result of a prior felony conviction. *See* TEX. PENAL CODE ANN. §§ 49.08(a), 12.42(b) (West, Westlaw through 2013 3d C.S.). By six issues, which we

reorganize as three, appellant argues that: (1) the trial court erred in denying his motion to suppress the blood draw evidence collected by police because police lacked exigent circumstances for the warrantless search; (2) the trial court erred in admitting expert retrograde extrapolation testimony that appellant contends was unreliable; and (3) the evidence supporting his conviction was insufficient. We affirm.

## I. Background[1]

Appellant was indicted for two counts of intoxication manslaughter in connection with his involvement in a 4:00 a.m. car accident on October 26, 2008 in San Benito, Texas that killed two teenage girls. Appellant pleaded not guilty to the charged offense, and his case was tried to a jury.

At trial, the State introduced evidence resulting from a blood-draw taken by nurses at the hospital to which appellant was transported after the accident. Jose Zuniga of the Texas Department of Public Safety (DPS) Crime Lab testified that he ran the tests on the blood taken, and those tests showed that appellant had a blood alcohol concentration (BAC) of approximately .10 at the time the sample was taken, which was at around 10:30 a.m., over six hours after the accident. Zuniga also testified as the State's expert on retrograde extrapolation. He provided a generalized retrograde extrapolation of appellant's BAC at the time of the accident, testifying that a hypothetical male weighing approximately 135 pounds, who had a BAC of .10 at 10:30 a.m. but consumed his last drink at 2 a.m., and who absorbs and eliminates alcohol from his system at the rate of an average healthy individual would, at the time of a 4:00 a.m. accident, have a BAC of

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

approximately .26.  Finally, the State presented the testimony of the various law enforcement and emergency medical services (EMS) personnel involved in the accident, who testified that at the time of the accident and at the hospital, appellant smelled strongly of alcohol.  Law enforcement officers and an accident-scene reconstruction expert further testified that the details of the collision—that appellant was travelling at a high rate of speed and did not brake before colliding with the victims' vehicle; that appellant veered into the victims' lane of traffic; car fluids on the road and gauge marks and other road damage indicative of a high-speed, out-of-control collision; and the extensive damage to the vehicles involved in the crash—indicated that appellant was intoxicated.

Appellant moved to suppress the BAC evidence and expert testimony on the basis that the blood draw was warrantless and unjustified by exigent circumstances.  Appellant also objected to the expert testimony, under the rules of evidence, as unreliable.  The trial court denied the motion to suppress and the evidentiary objection.

After the close of evidence, the jury returned a guilty verdict on both counts.  The trial court sentenced appellant to fifty years' incarceration on each count and ordered the sentences to run concurrently.  This appeal followed.

## II.  Motion to Suppress the Blood Draw

By his first issue, appellant argues that the trial court erred in failing to suppress the blood draw evidence collected by police.

## A.  Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion, under a bifurcated standard.  *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App.

3

2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial court is given almost complete deference in its determination of historical facts, especially if they are based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court in its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* However, for mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

In ruling on the motion to suppress, the trial court is the exclusive trier of fact and judge of a witness's credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

We view all of the evidence in the light most favorable to the trial court's ruling. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold its ruling on a motion to suppress if that ruling is supported by the record and is correct under

4

any theory of law applicable to the case. *Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## B. Applicable Law

The taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). However, under certain circumstances, a blood sample taken without a warrant is not an unreasonable search and seizure and, therefore, comports with constitutional requirements. *Schmerber v. California*, 384 U.S. 757, 770–71 (1966); *see* U.S. CONST. amend. IV. Police officers may constitutionally obtain a blood sample without a warrant or consent if they have probable cause for a warrantless arrest, exigent circumstances, and a reasonable method of extraction. *Schmerber*, 384 U.S. at 770–71; *see Aliff*, 627 S.W.2d at 169–70.[2] The natural metabolization of alcohol in the bloodstream does not present a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for all nonconsensual blood testing when intoxication is suspected. *Missouri v. McNeely*, 133 S.Ct. 1552, 1556 (2013). Instead, exigency in this context must be determined on a case-by-case basis considering the totality of the circumstances, including the well-settled fact that alcohol in the bloodstream begins to dissipate quickly as a soon as a person stops drinking. *Id.*; *see Aliff*, 627 S.W.2d at 169.

## C. Analysis

The following relevant facts are undisputed. When Texas Department of Public

---

[2] In Texas, there are also statutory requirements that may apply when a person is arrested for an intoxication-related offense. *See* TEX. TRANSP. CODE ANN. §§ 724.011-.013, 724.015 (West, Westlaw through 2013 3d C.S.); *State v. Laird*, 38 S.W.3d 707, 713–14 (Tex. App.—Austin 2000, pet. ref'd). But the Texas Implied Consent and Mandatory Blood Draw Statutes are not applicable in this case because appellant was not under arrest. *See* TEX. TRANSP. CODE ANN. § 724.011(a); *see also State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011).

Safety (DPS) Trooper Ramiro Aguilar arrived at the scene of the accident at around 4:50 a.m., appellant and the remaining survivors of the crash had already been transported to the hospital. Trooper Aguilar was informed by San Benito Police Officer Jaime Perez and various EMS personnel that appellant had smelled strongly of alcohol; Officer Perez told Trooper Aguilar that appellant was "wasted." Appellant told both Officer Perez and EMS that he had been drinking that night. Trooper Aguilar completed his investigation at the scene before going to the hospital at approximately 10 a.m. to speak with appellant. At this time, appellant denied that he had been drinking and refused to consent to a blood draw. Without a warrant, Trooper Aguilar directed a nurse to take a blood sample from appellant. Appellant was not arrested at this time.

At trial, Trooper Aguilar testified that he was the only DPS officer on duty that morning. He was solely responsible for securing the accident scene and preserving and collecting the evidence at the scene. In his investigation of the scene, Trooper Aguilar found empty beer cans around appellant's vehicle. Trooper Aguilar testified that when he arrived at the hospital approximately six hours after the accident, appellant had blood shot eyes, was speaking slowly, and still smelled strongly of alcohol. Hospital personnel told Trooper Aguilar that appellant had refused medical treatment. Trooper Aguilar testified that he did not take the time to secure a warrant at this point because it was a Sunday, and it would have taken at least three hours to get a warrant at this time. He testified that because alcohol dissipates rapidly from the blood, he needed to collect a sample from appellant before any further evidence of his possible intoxication was lost. When the blood sample came back from the DPS lab showing a BAC in excess of the

6

legal limit, a warrant was issued for appellant's arrest.

Appellant argues that the six-hour delay in taking the blood draw vitiates any exigent circumstances Trooper Aguilar might have had in not obtaining a warrant.[3] Appellant argues that Trooper Aguilar created the exigency in this case by waiting six hours to obtain the blood sample. *See Kentucky v. King*, 131 S.Ct. 1849, 1858 (2011) (holding that warrantless entry to prevent the destruction of evidence is not allowed where police "create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment").

We do not believe Trooper Aguilar created the exigent circumstances in this case. Trooper Aguilar testified that he was the only officer on duty that morning and that he was solely responsible for securing the scene of the accident. He testified that he traveled to the hospital as soon as he completed his duties at the accident scene, which were time-consuming and extensive. Finally, he testified that because it was a Sunday, it would have taken at least three hours to obtain a warrant from a judge, and because so much time had already passed since the accident, he could not wait for a warrant before obtaining a blood sample because the potential evidence of intoxication was rapidly degrading. The trial court was entitled to credit Trooper Aguilar's version of events. *See Ross*, 32 S.W.3d at 855. Under the record before it, the trial court could have reasonably determined that Trooper Aguilar went to the hospital as soon as was practicable considering the circumstances of that morning. Moreover, determining whether an officer impermissibly manufactured an exigency depends on "'the

_____

[3] Appellant does not challenge whether Trooper Aguilar had probable cause to arrest him or whether a reasonable method of extraction was used.

reasonableness and propriety of the investigative tactics that generated the exigency.'" *United States v. Rico*, 51 F.3d 495, 502 (5th Cir. 1995) (quoting *United States v. Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990)). Based on Trooper Aguilar's explanation of the events of that morning, the trial court could have reasonably concluded that the officer's investigative tactics were not an attempt to deliberately create exigent circumstances that would justify a warrantless blood draw. In the end, the foregoing were mixed questions of law and fact that depended on the trial court's assessment of Trooper Aguilar's credibility, and we must defer to the trial court's determination of these questions. *See Crain*, 315 S.W.3d at 48.

Having considered the totality of the circumstances and viewing the evidence in the light most favorable to the ruling, we conclude that the trial court did not abuse its discretion in determining that Trooper Aguilar acted under exigent circumstances in having appellant's blood drawn without a warrant. *See McNeely*, 133 S.Ct. at 1556; *see also Castleberry*, 332 S.W.3d at 465; *see also Aliff*, 627 S.W.2d at 169. Therefore, the evidence resulting from the blood draw—appellant's BAC and the retrograde extrapolation testimony by Zuniga—was properly admitted on this basis. *See Schmerber*, 384 U.S. at 770–71. We overrule appellant's first issue.

### III. Retrograde Extrapolation Testimony

Having overruled appellant's Fourth Amendment argument, we now turn to his second issue, in which he argues that the trial court abused its discretion in admitting Zuniga's retrograde extrapolation testimony as expert evidence because it was unreliable.

The science of retrograde extrapolation concerns the computation of a person's BAC at the time of driving based on a test result obtained some time later. *See Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001) (en banc). We review a trial court's ruling on the admissibility of scientific evidence under an abuse-of-discretion standard. *Id.* at 908–09. The proponent of scientific evidence has the burden of demonstrating by clear and convincing evidence that the evidence is reliable. *Id.* at 908. This is accomplished by showing the validity of the underlying scientific theory, the validity of the technique applying the theory, and the proper application of the technique on the occasion in question. *Id.*

In assessing the reliability of retrograde extrapolation evidence, in particular, we consider the following factors relevant to this case:

> (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.

*Id.* at 916.

The State concedes that, in this case, Zuniga's testimony did not meet *Mata*'s standards in that the expert did not have knowledge of any individual characteristics of appellant that might have affected the calculation. Moreover, we note that six hours elapsed between the accident and the time that the blood draw was administered and that only one test was administered. *See id.* Given that all three *Mata* factors weigh against

9

the reliability of the expert testimony in this case, we conclude that the trial court abused its discretion in admitting the testimony. We must next decide whether the admission of that testimony harmed appellant. And we believe that it did not.

The erroneous admission of retrograde extrapolation testimony is non-constitutional error. *Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex. Crim. App. 2003); *see also Martinez v. State*, 155 S.W.3d 491, 495–96 (Tex. App.—San Antonio 2004, no pet.); *Douthitt v. State*, 127 S.W.3d 327, 333 (Tex. App.—Austin 2004, no pet.). Therefore, we must disregard the trial court's error in admitting the State's retrograde extrapolation testimony unless it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). An appellate court may not reverse a judgment for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We must consider the entire record, including testimony, evidence, voir dire, closing arguments, and jury instructions, to determine whether the jury was affected. *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). We should also consider the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Bagheri*, 119 S.W.3d at 763.

Here, the theory of retrograde extrapolation was raised by neither party during voir dire or opening statements. Further, nothing occurred during voir dire or any other stage

10

that indicated any predisposition on the part of the jury toward giving scientific testimony more weight. Zuniga's testimony comprised approximately forty pages of a hefty four-volume reporter's record of trial testimony. Of those forty pages, over half of Zuniga's testimony was devoted not to retrograde extrapolation, but to an explanation of how he derived appellant's .10 BAC at the time of the blood draw. While the State did recount the extrapolation testimony in its closing arguments, it also specifically exhorted the jury to consider all of the evidence, and we cannot say that the State implied that the extrapolation testimony, alone, was sufficient to show intoxication. During its closing, the State also pointed to appellant's admission that he had been drinking and his refusal to take a blood test as evidence of his intoxication. And while it is true that Zuniga was offered as an expert, having reviewed the entire record, we find it clear that the State's strategy did not hinge on Zuniga's expert status. Zuniga, himself, readily admitted on cross-examination that his testimony was a generalized extrapolation based on hypothetical facts.

But perhaps most importantly, the evidence in addition to the extrapolation testimony that supported the jury's intoxication manslaughter verdict was overwhelming. *See Douthitt*, 127 S.W.3d at 338 (finding no harm in the erroneous admission of retrograde extrapolation testimony where the testimony was cumulative of other strong evidence of intoxication); *see also Morris v. State*, 214 S.W.3d 159, 180–82 (Tex. App.—Beaumont 2007), *aff'd on other grounds*, 301 S.W.3d 281 (Tex. Crim. App. 2009) (finding any error in the introduction of retrograde extrapolation evidence harmless in light of other overwhelming evidence of intoxication). Multiple witnesses—including EMS

11

personnel and law enforcement officers—testified that appellant smelled strongly of alcohol at the scene. Officer Perez, in particular, described appellant as "wasted." Even six hours after the crash, Trooper Aguilar testified that appellant still smelled of alcohol, was speaking slowly, and had blood-shot eyes. Appellant refused a blood test at the hospital. Officer Perez and paramedics who were at the scene testified that appellant admitted to them that he had been drinking prior to the crash. In his investigation at the scene, Trooper Aguilar found beer cans around appellant's truck. Trooper Aguilar and a DPS accident reconstruction specialist both testified that the evidence collected at the scene showed a violent collision that could be explained by intoxication. Both testified that there were no skid marks on the road, which indicated that the accident occurred suddenly, without time for anyone to brake. Trooper Aguilar testified that there were car fluids on the road, gouge marks in the pavement, and catastrophic damage to the vehicles, all of which was evidence of a violent, high-speed and high-impact collision. Finally, both testified that it was apparent from the damage to the vehicles, the debris in the roadway, and other physical details gathered at the scene that appellant had veered into the on-coming lane of traffic. In short, there was ample evidence from which the jury could infer that, at the time of the accident, appellant did not have the normal use of his mental or physical faculties as a result of alcohol. *See* TEX. PENAL CODE ANN. § 49.08(a), § 49.01(2) (West, Westlaw through 2013 3d C.S.); *see also Morris*, 214 S.W.3d at 180–82; *Douthitt*, 127 S.W.3d at 338. Zuniga's extrapolation testimony was cumulative of the foregoing evidence showing appellant's intoxication.

On the record before us, we have fair assurance that the trial court's error in

admitting the retrograde extrapolation testimony did not influence the jury or had but a slight effect. Thus, appellant was not harmed by the error. *See Solomon*, 49 S.W.3d at 365. We overrule his second issue.

## IV. Sufficiency of the Evidence

By his final issue, appellant argues that the evidence was insufficient to prove that he was intoxicated, an essential element of the charged offense. *See* TEX. PENAL CODE ANN. § 49.08(a).

## A. Standard of Review and Applicable Law

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he Jackson legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."). This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2013 3d C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . ."). Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim.

13

App. 2009). A fact finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Id.* at 523.

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. Here, appellant was intoxicated as defined by the relevant statute if: (1) he did not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body"; or (2) had "an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2).

## B. Analysis

Appellant argues that without the retrograde extrapolation testimony, [4] the evidence at trial was insufficient to prove intoxication. He complains that no breath or blood test or field sobriety test was performed at the time of the accident. He contends that the only evidence of his intoxication was the testimony that he smelled strongly of

---

[4] We note that in reviewing the sufficiency of the evidence, we must consider all of the evidence before the jury, even erroneously admitted evidence. *See Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). So under the law, we should consider the retrograde extrapolation testimony erroneously admitted by the trial court in this case. However, for the sake of argument and because we ultimately conclude that there is sufficient other evidence of intoxication, we will disregard the extrapolation testimony as appellant has done.

14

alcohol and that he had blood shot eyes and that, in light of testimony by the same witnesses that appellant was coherent and could respond to questions, this was not enough.

But as detailed above, there was ample other evidence of intoxication. Officer Perez testified that appellant appeared "wasted," from which the jury could infer that appellant was exhibiting signs beyond minor drunkenness. Beer cans were found on the ground outside appellant's truck. Appellant admitted to Officer Perez and paramedics that he had been drinking. And appellant refused a blood test at the hospital. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (refusal to take breath test is relevant evidence of intoxication). Finally, the evidence collected at the scene showed a violent collision that Trooper Aguilar and a DPS accident reconstruction specialist testified could be explained by intoxication. The car fluids and gouge marks in the roadway, the catastrophic damage to the vehicles, and the absence of skid marks on the road all pointed to a driver who veered into on-coming traffic and did not brake before the collision.

In his testimony, Officer Perez explained that no breath, blood, or field sobriety tests were performed at the scene because the paramount concern after the accident was treating the injuries suffered by those involved in the accident, including appellant. For instance, Officer Perez testified that it appeared to him that appellant's leg was injured, and as such, he did not make appellant stand to take field sobriety tests. In the end, this matter, and whether appellant's apparent coherence after the accident outweighed the odor of alcohol, were matters of weight and credibility that were within the

15

province of the fact finder and the determination of which we will not disturb on appeal. *See Brooks*, 323 S.W.3d at 899; *Laster*, 275 S.W.3d at 517.

In sum, the physical evidence collected at the scene showing a powerful, violent collision—combined with the evidence that appellant smelled of alcohol, admitted to drinking before the accident, and that beer cans were found around appellant's truck at the scene—would have allowed a rational fact-finder to conclude beyond a reasonable doubt that appellant had lost normal use of his physical and mental faculties as a result of alcohol. *See Jackson*, 443 U.S. at 319; *see also* TEX. PENAL CODE ANN. §§ 49.01(2), 49.08(a). We conclude that the evidence of appellant's intoxication was sufficient. His final issue is overruled.

## V. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 6th
day of March, 2014.

16